Marsha A. Houston (SBN 129956)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: 213-457-8000
Facsimile: 213-457-8080
mhouston@reedsmith.com

Paul D. Moak (TXBN 00794316)*
Devan J. Dal Col (TXBN 24116244)*
REED SMITH LLP
1221 McKinney Street, Suite 2100
Houston, Texas 77010
Telephone: 713-469-3800
Facsimile: 713-469-3899
pmoak@reedsmith.com
ddalcol@reedsmith.com
*Admitted pro hac vice

*Attorneys for Federal Home Loan Mortgage Corporation*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SANTA ROSA DIVISION

| | |
|---|---|
| In re<br>LEFEVER MATTSON, a California corporation, et al.,[1]<br><br>　　　　Debtor and Debtor in Possession | Case No. 24-10545<br><br>(Jointly Administered)<br><br>Chapter 11<br><br>**FEDERAL HOME LOAN MORTGAGE CORPORATION'S LIMITED OBJECTION TO DEBTORS' MOTION TO ESTABLISH PROCEDURES FOR REAL PROPERTY SALES** |

---

[1] The last four digits of LeFever Mattson's tax identification number are 7537. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://veritaglobal.net/LM. The address for service on the Debtors is 6359 Auburn Blvd., Suite B, Citrus Heights, CA 95621.

The Federal Home Loan Mortgage Corporation ("*Freddie Mac*") files this objection to the *Motion of Debtors to Establish Procedures for Real Property Sales* [Dkt. No. 689] (the "*Sale Procedures Motion*").

Freddie Mac is both the secured lender and the special servicer with respect to two properties (collectively, the "*Properties*") owned by Debtors in the above-captioned case: the "Carmichael Apartments"[2] and the "Courtyard Cottages."[3]

Freddie Mac has been under the federal conservatorship of the Federal Housing Finance Agency ("FHFA" or "Conservator") since 2008, where it remains today. *See* 12 U.S.C. 4617. As Conservator, FHFA is statutorily empowered to, among other things, (1) preserve and conserve Freddie Mac's assets and property, (2) to collect all obligations and money due Freddie Mac, and (3) to maximize net present value return and minimize the amount of any loss realized in the resolution of cases. As part of its delegated functions while in conservatorship, the Conservator has authorized Freddie Mac to carry out its day-to-day business operations, which includes Freddie Mac protecting its interests in this proceeding.

Freddie Mac objects to the Sale Procedures Motion on three bases: (1) the Debtors seek to improperly require secured lenders, including Freddie Mac, to pay a potential Break-up Fee and Closing Costs if the secured lender is forced to credit bid its outstanding debt to protect against a nonconsensual sale of its collateral for less than the value of the outstanding debt; (2) the Debtors proposal as relating to Freddie Mac in conservatorship, violates certain sections of 12 U.S.C. 4617, including that "[n]o property of [FHFA] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of [FHFA], nor shall any involuntary lien attach to the property of [FHFA]." *See* 12 U.S.C. §§ 4617(j)(3), and (3) the Debtors fail to specify the sale procedures applicable to insider sales and instead merely state that the procedures do not apply to insider sales.

---

[2] Debtor Red Cedar Tree LP (Case No. 24-10517) owns the Carmichael Apartments, which are located at 5800 Engle Road, Carmichael CA 95608.

[3] Debtor Red Mulberry Tree LP (Case No. 24-10518) owns the Courtyard Cottages, which are located at 7337 Power Inn Road, Sacramento CA 95828.

### *1. The Court Should Decline to Approve Sale Procedures that Impose Nonconsensual Break-up Fees and Other Sale Costs on Secured Lenders.*

Except in certain situations inapplicable here, Bankruptcy Code section 363(f) precludes a debtor from selling a lender's collateral free and clear of the lender's liens unless the lender consents or is paid in full. *See* 11 U.S.C. § 363(f). While the Debtors represent that the value of each Property exceeds the applicable debt owed to Freddie Mac, the Debtors reserve the right to attempt to sell the Properties without Freddie Mac's consent (and over Freddie Mac's objection) for less than full payment to Freddie Mac. The Sale Procedures Motion preserves Freddie Mac's rights to oppose any nonconsensual sale, and that issue is not ripe for determination currently.

The Sale Procedures, however, seek to burden Freddie Mac improperly with sales expenses, including potentially material break-up fees, broker fees, and other advisory fees, arising from the Debtors' efforts to sell the Properties without Freddie Mac's consent. The "Large Asset Sale Procedures"[4] state that secured creditors that exercise their credit-bid rights to prevent a nonconsensual sale to a Stalking Horse bidder are required to pay the applicable Break-up Fee and Closing Costs (which include broker fees and FTI's advisory fee). *See* Sale Procedures Motion, at p. 14-15. This is an unreasonable and improper burden. The Debtors should not be permitted to enter into a Stalking Horse agreement (or any sale agreement) for the sale of Freddie Mac's Properties at a price less than the full amount owed to Freddie Mac absent Freddie Mac's consent; a nonconsensual sale for less than the secured debt provides no benefit to the lender nor the estate, and the lender should not be required to pay any estate costs associated with that misguided effort. Unsurprisingly, other courts have disallowed break-up fees when imposed against secured lenders exercising a credit bid right. *See, e.g., In re TIC Memphis RI 13, LLC*, Case No.12-29322, 2012 Bankr. LEXIS 6293, at *6-7 (Tenn. W.D. Oct. 31, 2012) (denying debtor's request for a break-up fee in context of

---

[4] The Debtors define "Large Assets" as those properties with a "sale price" equal to or greater than $5 million. Motion, at p. 5. While it is not entirely clear, the Sale Procedures presumably treat both Properties as "Large Assets" based on the Debtors' schedules (listing the value of Courtyard Cottages as $7.5 million and Carmichael Apartments as $8.652 million). The Sale Procedures create some ambiguity, though, as they seek to categorize properties based on the "sales price," which presumably could be less than the Debtors' scheduled values. The Debtors should clarify that the Large Asset procedures apply to the Properties.

collateral surcharge: "[A]ny break-up fee at this time would only serve to further reduce the collateral value or the proceeds thereof that the secured lender would receive upon sale of the business assets, especially if the secured lender exercises its credit bid rights under 11 U.S.C. § 363(k).").

Freddie Mac does not consent to the Debtors' use of Freddie Mac's cash collateral to pay any Break-up Fee, Closing Cost, broker fee, or any other sale-related expense. To the extent the Debtors seek authority to use Freddie Mac's cash collateral on a nonconsensual basis, they must provide adequate notice of that intent and adequate protection of Freddie Mac's interests—neither of which has occurred to date. Similarly, the Debtors should not be permitted to surcharge Freddie Mac's collateral, under Bankruptcy Code section 506(c), for any Break-up Fee, Closing Cost, broker fee, or sale-related expense arising from a sale that Freddie Mac opposes, and the Sale Procedure Motion should not be used to indirectly achieve that objective.

2. **The Sale Procedures Conflict with Federal Protections of Freddie Mac and its Conservator**

The Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110- 289, 122 Stat. 2654 (codified as 12 U.S.C. § 4511 et seq.), provides special protections to the assets of Freddie Mac's conservatorship estate, which includes Freddie Mac's interests in the secured collateral herein. *See Berezovsky v. Moniz*, 869 F.3d 923 (9th Cir. 2017). Thus, to the extent the Debtors' proposal would conflict with the federal protections of HERA accorded to Freddie Mac and its Conservator, the motion to establish procedures for real property sales should not be granted. Freddie Mac remains committed to work with Debtors for the appropriate resolution of property sales relating to the two secured properties. Freddie Mac takes no position as to property sales unrelated to Freddie Mac.

3. **The Debtors Should Clarify the Procedures Applicable to Insider Sales.**

The Debtors ambiguously state that "[t]hese Sale Procedures shall not apply if the proposed purchaser is an insider of the Debtors." Motion, at p. 12 n.4. Yet the Debtors fail to disclose what procedures apply to insider sales. Because insider sales are subject to heightened scrutiny, the

Debtors should identify the procedures applicable to those sales and provide creditors with sufficient notice and the opportunity to object.

* * *

Freddie Mac respectfully requests that the Court deny the Debtors' Sale Procedures Motion unless the Debtors (1) clarify that Freddie Mac is not required to pay any Break-up Fee, Closing Cost, broker fee, or any other sale-related expense absent Freddie Mac's express consent; (2) clarify that the Debtors shall not attempt to sell (to a Stalking Horse or other purchaser) either Freddie Mac Property for a price that is insufficient to pay Freddie Mac's obligations in full absent Freddie Mac's consent; and (3) provide transparency regarding the notice and process applicable to insider sales.

Dated: February 12, 2025.   Respectfully submitted,

REED SMITH LLP

By: */s/ Marsha A. Houston*
Marsha A. Houston (SBN 129956)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: 213-457-8000
Facsimile: 213-457-8080
mhouston@reedsmith.com

Paul D. Moak (TXBN 00794316)*
Devan J. Dal Col (TXBN 24116244)*
REED SMITH LLP
1221 McKinney Street, Suite 2100
Houston, Texas 77010
Telephone: 713-469-3800
Facsimile: 713-469-3899
pmoak@reedsmith.com
ddalcol@reedsmith.com
*Admitted pro hac vice*