Todd S. Garan (SBN 236878)
tgaran@aldridgepite.com
Greg P. Campbell (SBN 281732)
gcampbell@aldridgepite.com
ALDRIDGE PITE, LLP
3333 Camino del Rio South
Suite 225
San Diego CA 92108
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

Attorneys for Secured Creditors:
Nationstar Mortgage LLC as Secured Creditor, and Servicer for
Secured Creditors Below

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SANTA ROSA DIVISION

| | |
|---|---|
| In re | Case No.24-10545 |
| | Chapter 11 |
| LEFEVER MATTSON, a California corporation, *et al*, [1] | (Jointly Administered) |
| Debtor and Debtor in Possession, | **CREDITORS' OPPOSITION TO DEBTORS' MOTION TO ESTABLISH PROCEDURES FOR REAL PROPERTY SALES** |
| | **Hearing**: Date:   February 19, 2025 Time:  11:00 A.M. Place:  United States Bankruptcy Court 1300 Clay Street, Courtroom 215 Judge:  Hon. Charles Novak |

Nationstar Mortgage LLC, in its capacity as Secured Creditor, and servicer the Secured

Creditors as to the Claims and real properties below (collectively herein, "Creditors") of the

above-entitled Debtors, LeFever Mattsson. *et al* ("Debtors") hereby submits their Opposition

("Opposition") to Debtors' Motion for Order Establishing Procedures for Real Property Sales

---

[1] The last four digits of LeFever Mattson's tax identification number are 7537. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://veritaglobal.net/LM. The address for service on the Debtors is 6359 Auburn Blvd., Suite B, Citrus Heights, CA 95621.

1
--

("Motion").  The basis of the Opposition is stated below:

# I.  STATEMENT OF FACTS

## A. SUBJECT CLAIMS:

| Creditor/Servicer | Subject Property | Scheduled: |
|---|---|---|
| **Nationstar Mortgage, LLC** | **1191 Araquipa Ct, Vacaville, CA 95687**<br><br>Promissory Note dated May 17, 2007, executed by Robert D. Baker and Linda Jean Baker ("Borrowers") to Aegis Wholesale Corporation ("Lender") in principal sum of $260,000 (the "Note").  The Note is secured by a deed of trust (the "Deed of Trust") encumbering the Subject Property, which includes an Assignment of Rents.    Subsequently, Lender's beneficial interest in the Loan was assigned and transferred to Creditor.  A copy of the Note and Deed of Trust is attached hereto as <u>Exhibit 1</u>.<br><br>Approximate Balance: $204,550.30 | LeFever, Dkt. No.292 Sch AB |
| U.S. Bank National Association, as Trustee for MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-3 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-3;<br><br>Nationstar Mortgage LLC as servicer | **5513-5515 Missie Way, Sacramento, CA 95841**<br><br>Promissory Note dated January 3, 2007, executed by Rick Slyter and Kathy Slyter ("Borrowers") to BSM Financial, LP ("Lender") in principal sum of $300,000 (the "Note"). The Note is secured by a deed of trust (the "Deed of Trust") encumbering the Subject Property, which includes an Assignment of Rents. Subsequently, Lender's beneficial interest in the Loan was assigned and transferred to Creditor. A copy of the Note and Deed of Trust is attached hereto as <u>Exhibit 2</u>.<br><br>Approximate Balance: $280,664.67 | Valley Oak Investments, LP<br><br>Dkt. No.344, Sch AB |
| U.S. Bank National Association, as Trustee for LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-15N<br><br>Nationstar Mortgage LLC as | **1173 Araquipa Court, Vacaville, CA 95687**<br><br>Promissory Note dated April 16, 2007, executed by George F. Parma ("Borrower") to Greenpoint Mortgage Funding, Inc. ("Lender") in principal sum of $344,000 (the "Note").  The Note is secured by a deed of trust (the "Deed of Trust") encumbering the Subject Property, which | LeFever, Dkt. No.292 Sch AB |

2
--

| | | |
|---|---|---|
| servicer | includes an Assignment of Rents. Subsequently, Lender's beneficial interest in the Loan was assigned and transferred to Creditor. A copy of the Note and Deed of Trust is attached hereto as <u>Exhibit 3</u>.<br><br>Approximate Balance: $311,895.39 | |
| U.S. Bank National Association, as Trustee for LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-3<br><br>Nationstar Mortgage LLC as servicer | **<u>7308/7310 Arleta Court, Sacramento, CA 95823</u>**<br><br>Promissory Note dated October 3, 2005, executed by Pedro Femenia and Carol Femenia ("Borrowers") to Greenpoint Mortgage Funding, Inc. ("Lender") in principal sum of $336,000 (the "Note"). The Note is secured by a deed of trust (the "Deed of Trust") encumbering the Subject Property, which includes an Assignment of Rents. Subsequently, Lender's beneficial interest in the Loan was assigned and transferred to Creditor. A copy of the Note and Deed of Trust is attached hereto as <u>Exhibit 4</u>.<br><br>Approximate Balance: $221,812.30 | Valley Oak Investments, LP<br>Dkt. No.344, Sch AB |
| Nationstar Mortgage LLC | **<u>157 James River Road, Vallejo, CA 94591</u>**<br><br>Promissory Note dated December 20, 2002, executed by Jeffrey P. Robinson and Karen W. Robinson ("Borrowers") to Lehman Brothers Bank, FSB ("Lender") in principal sum of $260,000 (the "Note"). The Note is secured by a deed of trust (the "Deed of Trust") encumbering the Subject Property, which includes an Assignment of Rents. Subsequently, Lender's beneficial interest in the Loan was assigned and transferred to Creditor. A copy of the Note and Deed of Trust is attached hereto as <u>Exhibit 5</u>.<br><br>Approximate Balance: $134,563.83 | LeFever, Dkt. No.292 Sch AB |
| U.S. Bank National Association, as Trustee for LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-3 | **<u>7300 Berna / 7325 Arleta, Sacramento, CA 95823</u>**<br><br>Promissory Note dated December 20, 2002, executed by Jeffrey P. Robinson and Karen W. Robinson ("Borrowers") to Lehman Brothers Bank, FSB ("Lender") in principal sum of | Valley Oak Investments, LP<br>Dkt. No.344, Sch AB |

3

--

Case: 24-10545   Doc# 798   Filed: 02/12/25   Entered: 02/12/25 14:07:13   Page 3 of 8

| | | | |
|---|---|---|---|
| 1 | Nationstar Mortgage LLC as servicer | $260,000 (the "Note"). The Note is secured by a deed of trust (the "Deed of Trust") encumbering the Subject Property, which includes an Assignment of Rents. Subsequently, Lender's beneficial interest in the Loan was assigned and transferred to Creditor. A copy of the Note and Deed of Trust is attached hereto as Exhibit 6.<br><br>Approximate Balance: $234,509.54 | |
| 7 | U.S. Bank National Association, as Trustee for MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-3 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-3<br><br>Nationstar Mortgage LLC as servicer | **6346 Sorrell Court, Citrus Heights, CA 95621**<br><br>Promissory Note dated February 5, 2007, executed by Anthony Wold and Jodene Wold ("Borrowers") to BMS Financial, LP ("Lender") in principal sum of $326,800 (the "Note"). The Note is secured by a deed of trust (the "Deed of Trust") encumbering the Subject Property, which includes an Assignment of Rents. Subsequently, Lender's beneficial interest in the Loan was assigned and transferred to Creditor. A copy of the Note and Deed of Trust is attached hereto as Exhibit 7.<br><br>Approximate Balance: $304,648.00 | Valley Oak Investments, LP Dkt. No.344, Sch AB |
| 16 | Nationstar Mortgage LLC | **5537/5539 Missie Way, Sacramento, CA 95841**<br><br>Promissory Note dated December 9, 2002, executed by Jeffrey P. Robinson and Karen W. Robinson ("Borrowers") to Lehman Brothers Bank, FSB ("Lender") in principal sum of $180,000 (the "Note"). The Note is secured by a deed of trust (the "Deed of Trust") encumbering the Subject Property, which includes an Assignment of Rents. Subsequently, Lender's beneficial interest in the Loan was assigned and transferred to Creditor. A copy of the Note and Deed of Trust is attached hereto as Exhibit 8.<br><br>Approximate Balance: $93,426.87 | Valley Oak Investments, LP Dkt. No.344, Sch AB |

## B. THE BANKRUPTCY PROCEEDINGS

On September 12, 2024, Debtor, LeFever Mattsson, Inc. commenced a case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court

4

--

Case: 24-10545    Doc# 798    Filed: 02/12/25    Entered: 02/12/25 14:07:13    Page 4 of 8

for the Northern District of California – Santa Rosa Division and was assigned Case No. 24-10545.

On September 20, 2024, the Court entered its Order for Joint Administration of Approximately 59 of Debtor's affiliated Bankruptcy Cases that were filed concurrently with Debtor's case, with the Debtor's case being the Lead Case. (*See*, Dkt. No.45).

On January 29, 2025, Debtors filed the instant Motion to propose sale procedures that seeks to allow Debtors to sell real properties of the respective estates in a streamlined manner without need of individual motions to sell, while attempting to protect creditors' rights, in an effort to "…minimize costs to the estates and avoid chilling purchaser interest…." (*See,* Dkt. No.689). The Debtors' Motion propose sale procures as to both small property assets, and large property assets. Creditors believe their Secured Claims/Properties would fall under the small property assets procedures. While Creditors can certainly appreciate the Debtors need for an efficient and cost effective process for sales of the properties in a case as that may help mitigate costs, Creditors nonetheless believes the proposed sale procedures as proposed are too heavy handed, not fair and equitable, and do not provide sufficient information and/or due process rights for affected Creditors. As such, it objects accordingly for the reasons set forth below.

## I. ARGUMENT

### A. CREDITORS OBJECT TO THE DEBTORS' PROPOSED SALE PROCEDURES AS THE PROCEDURES DO NOT PROVIDE SUFFICIENT NOTICE, INFORMATION RELATED TO A PROPOSED SALE, AND/OR PROTECTIONS FOR AFFECTED CREDITORS AND THAT FURTHER REFINEMENT IS NEEDED

**1. Creditors Object to the Procedures Because Motion Doesn't Really Provide Substantive Evidence that Such Truncated Procedures Are Necessary To Avoid Chilling Sale Efforts**.

The Debtors' Motion and supporting declaration make the assertion that having to undertake a full noticed motion sale process for each of the identified properties would not only be more expensive, but chill its sale efforts. Creditors do not necessarily agree with this blanket assertion. Creditors understand having to repeatedly file independent motions to sell could certainly increase the attendant costs; however, no specific evidentiary examples are provided supporting how the marketing is chilled as to these properties and the Motion just asks creditors to accept this as fact.

Case: 24-10545   Doc# 798   Filed: 02/12/25   Entered: 02/12/25 14:07:13   Page 5 of 8

Creditors do not. The Debtors are in bankruptcy and it is manifest that sales that are subject to court oversight and processes, including, but not limited credit bids and/or possible delays.

Additionally, the Motion, if granted, appears to create a de facto finding that the identified property transaction, once notice is served, is automatically proposed in good faith for purposes of Section 363(m), that a sound business judgment has been met and that grounds under 11 U.S.C. § 363(f)(1)-(5) would be found. Creditors are not entirely convinced this is appropriate, simply because the Debtors are poised to complete a transaction quickly.

**2. Creditors Object To Certain Aspects of the Proposed Sale Notice and The Objection/Credit Bid Process**:

The Motion proposes to two types of sale notices, one for "small asset sales" and one for "large asset sales." As to the small asset sales, Debtors propose to serve a "sale notice" on creditors *by mail*, and then give creditors 7 calendar days from service of the sale notice to file an Objection and/or Credit Bid. Generally, the Sale Notice is to list the property, sale price, what debtor is the owner, the name of any lienholder, amount of the lien and the basis of dispute, buyers and grounds under Section 363(f) for the sale.

Initially, Creditor questions whether the sale notice should be mailed in the first place. Why can't the Debtors file the equivalent of this sale notice on the docket, which is likely to reach creditors more readily via ecf than mailing, and it creates a clear record with respect to a transaction, including, but not limited to, objections/credit bids and/or resolution of the same on the record. Creditors are already being required to serve and file objections with the Court. Is there an appreciable difference in cost to preparing a notice that is mailed versus filing the same notice with the Court? Creditors do not believe so, and none of that rationale is sufficiently laid out in the Motion.

Creditors do not believe there is sufficient justification or sufficient evidence to support a preemptive shortening of every sale process to *under 7 calendar days* as a blanket request, and Creditors strongly object. From a practical perspective, what if Debtors mail on a Friday? Further, mailing itself would take a few days off that process, which means in reality a creditor would have about 3 days in which to review and respond to a proposed sale notice that may include responding

to incorrect assertions as to claim amount, whether the claim is in dispute, or the grounds for sale under Section 363(f) are actually met, and/or whether a creditor should exercise its credit bid rights. Creditors understands that courts may deviate from the full notice requirements under FRBP 6004(c) and allow hearing on shortened notice *where facts are plead as to the specific sale so as to justify the hearing on such notice*. However, Debtors' are not setting forth any specific facts demonstrating any such issues are present as to theses sale to support or justify such truncated procedures beyond the assertion of additional administrative costs. If Debtors are seeking to save costs, great, but there's no reason Creditors should not be afforded a far more reasonable amount of time to respond to the sale notice. This seems calculated to prejudice secured creditors and Creditors assert is not in good faith, especially if Debtors are going to allege a dispute exists as to a creditor's lien. Surely cost saving should provide some reciprocal benefit and not an exclusive one.

Further, Creditors fails to see why a distinction is being made between and objection or credit bid in how a creditor responds to the sale notice. For example, why is a creditor is supposed to file an Objection to the sale with the Court but merely "serve" a credit bid. A creditor's desire to exercise a credit bid should be filed with the Court as a matter of record, and to avoid any disputes over whether a Credit Bid was "timely" served and/or properly responded to, but more importantly, also to track if it was appropriately withdrawn. Additionally, justification or legal grounds exist for Debtors to "shift closing costs" to a creditor that is choosing to exercise its credit bid rights? Accordingly, Creditors object to the Motion's proposed sale notice and related procedures as requested, and believes further refinement and more equitable procedures considered.

**3. Creditors Object To The Lack of Clear Information As To: 1) Timing As to The Payment of Undisputed Liens; 2) Timelines for Resolution as To Disputed Claims; and 3) Where exactly the Net Sale Proceeds Are Being Held if Not Paid Through Escrow.**

The Debtors' Motion lacks some important details that appear more calculated to hold funds hostage and running up administrative costs than timely pay secured creditors, especially those that may be undisputed. Creditors object that there is no provision that undisputed liens are paid out of escrow. What justification is there for not paying an undisputed lien out of escrow? A creditors' claim would continue to accrue on the net sales proceeds subject to their lien, and does not stop

OPPOSITION TO MOTION TO ESTABLISH SALE PROCEDURES

accruing simply because the lien may be transferred to the proceeds. There should be a timeline and/or distribution schedule for undisputed liens if not paid through escrow, or a clear explanation why not. Similarly, there should be a realistic timeline for resolving any disputed claims as well.

Additionally, if undisputed secured claims are not being paid out of escrow, where are the net funds being held? Creditors assert the proceeds should be held in segregated interest bearing account and not co-mingled with other funds of the estate since they are subject to distinct liens, but none of that is discussed in the Motion. For example, would the next funds be held in the specific debtor's DIP account with clear earmark?

Accordingly, Creditors object to the Debtors' proposed Motion, and asks the Court to deny the Motion, or substantively provide for further details as discussed herein.

**WHEREFORE**: Creditors respectfully requests:

1. That the Court deny Debtors' Motion For Order for Sale Procedures As Proposed, or that the Debtors' procedures be revised to provide or and address Creditors objections and concerns; and

2. Such other relief as the Court deems just and proper.

Respectfully Submitted,

**ALDRIDGE PITE, LLP**

Dated: February 12, 2025

By: /s/ *Todd S. Garan*
Todd S. Garan
Attorneys for Nationstar Mortgage LLC, in its capacity as Secured Creditor, and servicer the Secured Creditors discussed herein

OPPOSITION TO MOTION TO ESTABLISH SALE PROCEDURES