JMBM | Jeffer Mangels
Butler & Mitchell LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# EXHIBIT A

28

1          UNITED STATES BANKRUPTCY COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3                  -oOo-

4   In Re:              )Case No. 24-10545     )
                       )Chapter 11          )

5   LEFEVER MATTSON, A CALIFORNIA )                ))
   CORPORATION, ET AL.       )Oakland, California   )

6                       )Tuesday, June 24, 2025 )
               Debtors.  )11:00 AM          )

7                       )
                       )Case No. 24-10715

8   In Re:              )
                       )1. DEBTOR'S MOTION FOR ORDER

9   KS MATTSON PARTNERS, LP    )AUTHORIZING DESIGNATION OF
                       )ROBBIN L. ITKIN AS

10              Debtor.  )RESPONSIBLE INDIVIDUAL
                       ) PURSUANT TO B.L.R. 4002-1.

11                         [133]; CONT'D FROM 6/13/25
                         2. MOTION OF DEBTOR FOR ENTRY

12                         OF AN ORDER (I) EXTENDING
                         TIME TO FILE SCHEDULES OF

13                         ASSETS AND LIABILITIES,
                         STATEMENTS OF FINANCIAL

14                         AFFAIRS AND LIST OF EQUITY
                         SECURITY HOLDERS, AND (II)

15                         SUSPENDING THE
                         NONGOVERNMENTAL BAR DATE.

16                         [149] SHORTEN TIME

17                         24-10545:
                         MOTION TO DESIGNATE CREDITOR

18                         KS MATTSON PARTNERS, LP AS A
                         "PERMITTED PARTY" UNDER THE

19                         COURT'S 12/13/24; ORDER FILED
                         BY INTERESTED PARTY KS

20                         MATTSON PARTNERS, LP. [1195]

21

22

23               TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE CHARLES NOVACK

24             UNITED STATES BANKRUPTCY JUDGE

25

Case: 24-10545   Doc# 1677-1   Filed: 07/01/25   Entered: 07/01/25 15:20:53   Page 2 of 27

```
 1

 2    APPEARANCES: (All parties appearing via Zoom)

 3    Proposed counsel to KS          ERIN N. BRADY, ESQ.
      Mattson Partners, LP:           Hogan Lovells US LLP
 4                                     1999 Avenue of the Stars
                                       Suite 1400
 5                                     Los Angeles, CA 90067

 6    For KS Mattson Partners,        MICHELINE NADEAU FAIRBANK, ESQ.
      LP and Kenneth Mattson:         Fennemore Wendel
 7                                     7800 Rancharrah Parkway
                                       Reno, NV 89511
 8                                     (775) 788-2200

 9    For LeFever Mattson, a          DAVID A. TAYLOR, ESQ.
      California Corporation and      Keller Benvenutti Kim LLP
10    its affiliated debtors:         425 Market Street
                                       26th Floor
11                                     San Francisco, CA 94105
                                       (415)496-6723
12
      For Umpqua Bank:                ROBERT B. KAPLAN, ESQ.
13                                     Jeffer Mangels Butler & Mitchell
                                       LLP
14                                     Two Embarcadero Center
                                       5th Floor
15                                     San Francisco, CA 94111
                                       (415)398-8080
16
      For Socotra Capital, Inc.:      CAROLINE R. SISCHO, ESQ.
17                                     Sheppard, Mullin, Richter &
                                       Hampton LLP
18                                     333 South Hope Street
                                       43rd Floor
19                                     Los Angeles, CA 90071
                                       (213)620-1780
20
      For Office of the United        PHILLIP SHINE, ESQ.
21    States trustee:                 U.S. Department of Justice
                                       450 Golden Gate Avenue
22                                     5th Floor
                                       Suite #05-0153
23                                     San Francisco, CA 9410
                                       (415) 705-3333
24

25
```

1

2

For Official Committee of    BROOKE E. WILSON, ESQ.
Unsecured Creditors :      Pachulski Stang Ziehl & Jones LLP
3                                     One Sansome Street
4                                     Suite 3430
                                     San Francisco, CA 94104
5                                     (415)263-7000

6  ALSO PRESENT:               Robbin Itkin,
                                  Responsible Individual for KSMP
7

8

9

10

11

12

13

14

15

  Court Recorder:          RUBY BAUTISTA
16                                 United States Bankruptcy Court
                                 1300 Clay Street
17                                   Oakland, CA 94612

18

  Transcriber:            SHARONA SHAPIRO
19                                 eScribers, LLC
                                 7227 N. 16th Street
20                                 Suite #207
                                 Phoenix, AZ 85020
21                                 (800) 257-0885

22  Proceedings recorded by electronic sound recording;
    transcript provided by transcription service.
23

24

25

1          OAKLAND, CALIFORNIA, TUESDAY, JUNE 24, 2025, 11:05 AM

2                                  -oOo-

3          (Call to order of the Court.)

4          THE CLERK:  Line item number 2, Your Honor, KS Mattson

5     Partners, LP.

6          And I'll bring in the appearances, Your Honor.

7          MS. BRADY:  Good morning, Your Honor.  Can you hear

8     me?

9          THE COURT:  Yes.

10         MS. BRADY:  Good morning, Your Honor.  It's Erin

11    Brady, from Hogan Lovells, proposed counsel to KSMP.  And

12    Robbin Itkin, the responsible individual, is also on the line

13    this morning.

14         And we've got two matters up today.

15         THE COURT:  Well, hang on.  Hang on.  Hang on.

16         MS. BRADY:  Yep.

17         THE COURT:  We've got a full complement of attorneys

18    who want to make their appearance.

19         MS. BRADY:  Yes.

20         THE COURT:  Okay.  Mr. Taylor?

21         MR. TAYLOR:  Yes.  Your Honor, good morning.  David

22    Taylor, from Keller Benvenutti Kim, for LeFever Mattson and its

23    affiliated debtors.

24         THE COURT:  Mr. Kaplan?

25         MS. FAIRBANK:  Good morning, Your Honor.  Micheline

1   Fairbank --

2           THE COURT:  Yes, Ms. Fairbank.  I apologize.  Go

3   ahead.

4           MS. FAIRBANK:  That's okay.  Thank you, Your Honor.

5   Micheline Fairbank, outgoing attorney for K.S. Matson Partners.

6           THE COURT:  Anyone else want to make an appearance

7   today?

8           MR. KAPLAN:  Yes.  Good morning, Your Honor.  Robert

9   Kaplan for Umpqua Bank.

10          MS. WILSON:  Good morning, Your Honor.  Brooke Wilson,

11  from Pachulski Stang Ziehl & Jones, for the committee of the

12  LeFever Mattson debtors.

13          MS. SISCHO:  Good morning, Your Honor.  Caroline

14  Sischo for secured creditor, Socotra capital.

15          MR. SHINE:  Good morning, Your Honor.  Phillip Shine,

16  appearing on behalf of the United States Trustee.

17          THE COURT:  Okay.  Good morning to you all.  There's a

18  few -- as Ms. Brady mentioned, there's a few matters on

19  calendar.  Let's first deal with the continued hearing in the

20  debtor's motion for authority to designate Ms. Itkin as the

21  responsible individual.  I did see Ms. Itkin's supplemental

22  declaration.  I didn't see any opposition by the U.S. Trustee.

23          Mr. Shine, any opposition to her appointment?

24          MR. SHINE:  Your Honor, we have resolved opposition

25  through the proposed order.

1      THE COURT: Okay. So the application to appoint her

2  as the responsible individual is granted. And Mr. Shine,

3  again, just upload -- Ms. Brady or Mr. Shine, upload the order

4  and I'll take a look at it and sign it hopefully.

5      Okay. We also have the debtor's motion to extend the

6  time to file schedules -- I mean, the bankruptcy schedules and

7  statement of financial affairs, list of equity security

8  holders. Let's first deal with that.

9      Well, the creditors' matrix was timely filed, correct,

10 Ms. Brady?

11     MS. BRADY: Yes, it was.

12     THE COURT: Okay.

13     MS. BRADY: Although I fully anticipate it will be

14 amended as we continue to find additional --

15     THE COURT: Right.

16     MS. BRADY: -- information and creditors.

17     THE COURT: You read my mind. Okay. How much time do

18 you need to file the schedules and statement of financial

19 affairs?

20     MS. BRADY: Your Honor, we're asking for sixty days,

21 which puts us -- sixty days after the order for relief, which

22 puts us at August 8th. And we're asking for that simply

23 because we're literally reconstructing the books and records,

24 and it doesn't make a whole lot of sense to file schedules that

25 are completely incomplete only to spend the time and money to

Case: 24-10545   Doc# 1677-1   Filed: 07/01/25   Entered: 07/01/25 15:20:53   Page 7
of 27

1  amend them.  So we were hoping to get a reasonable amount of

2  time that would give us an opportunity to do it --

3           THE COURT:  Right.

4           MS. BRADY:  -- hopefully right.

5           THE COURT:  Okay.  How is that going to -- and again,

6  there may not be an answer for this today, but I've got this

7  looming motion for substantive consolidation.  And how is that

8  request -- and I'm not saying there's a reason -- this isn't a

9  reason to deny it.  I'm going to grant the debtor more time.

10  Just the question I have is --

11           MS. BRADY:  Yes.

12           THE COURT:  -- what impact does that -- and again, I

13  think I'm hearing the motion for substantive consolidation

14  before August 8th, or at least the initial hearing.  How is

15  that going to affect a motion for substantive consolidation,

16  which leads me to the next question, which is who gets

17  served -- creditors of KS Mattson Partners, L.P. get served

18  with the motion for substantive consolidation, even though it's

19  been filed already, correct?

20           MS. BRADY:  That is correct.  My understanding, if

21  I -- and counsel for the LeFever Mattson committee can correct

22  me if I'm wrong.  My understanding was that we provided them a

23  copy of our creditor matrix, and they filed -- they served it

24  upon the creditors on our matrix as well as their creditor

25  group.

1    THE COURT: Right.

2    MS. BRADY: I think that, to your point, there will

3    probably be new creditors that are uncovered between now and

4    the time -- the 16th of July, for sure. And I'm assuming that

5    they're going to go ahead and serve that as a supplemental

6    service on those creditors. But I'll defer to them as it's

7    their motion.

8    THE COURT: But it may be a fait accompli if -- again,

9    I think I've already said I'm not going to rule on it.

10    MS. BRADY: Right.

11    THE COURT: It's unlikely I'm going to rule on this at

12    the hearing date. How do you file a motion for substantive

13    consolidation, again, when the schedules haven't been filed

14    yet. Mr. Taylor?

15    MS. BRADY: I --

16    THE COURT: Go ahead, Ms. Brady.

17    MS. BRADY: Yeah.

18    THE COURT: I mean, again --

19    MS. BRADY: Yeah. So I --

20    THE COURT: Again, I'm just raising questions that I'm

21    going to repeat. Again, it all relates to the debtor's

22    reasonable request for more time to file schedules. So I'm

23    just giving you some advance notice of what my questions are

24    most likely going to be.

25    MS. BRADY: Your Honor, I think that we also believe

Case: 24-10545    Doc# 1677-1    Filed: 07/01/25    Entered: 07/01/25 15:20:53    Page 9
of 27

1    that we can't really evaluate a substantive consolidation

2    motion until we have our arms around what our creditor body

3    looks like and how that would impact our creditor body.  So I

4    think Your Honor made the point at our last hearing that the

5    July 16th hearing would be a preliminary hearing.  We can

6    obviously talk about it.  The committee has been very willing

7    to talk with us about it, very open and communicating.

8              THE COURT:  Okay.

9              MS. BRADY:  And so I do think -- I think, as an

10   initial matter, obviously, we need to understand who the

11   creditors are, what the assets are, all of that, that will go

12   into the statements and schedules.  So regardless of whether

13   there's a sub-con or not, this all needs to be figured out.

14   But I do agree with Your Honor that we need to have a handle on

15   what's in this estate as part of evaluating whether substantive

16   consolidation is appropriate.

17             THE COURT:  Right.  Just so I can -- this debtor owns

18   real property -- the property that this debtor owns or has an

19   interest in, does it have full fee title to those properties?

20             MS. BRADY:  For some.  There's also tenancy in common

21   on other properties.

22             THE COURT:  But there's -- okay.  And some of this --

23   and I assume that there's secured debt against the property?

24             MS. BRADY:  I believe some, but not all.

25             THE COURT:  Okay.  So then I've got a request to

Case: 24-10545   Doc# 1677-1   Filed: 07/01/25   Entered: 07/01/25 15:20:53   Page 10 of 27

1    suspend the nongovernmental bar date, claims bar date, A,

2    probably because we don't have a full creditors matrix -- or

3    the creditors' matrix probably isn't complete.

4         How long of a suspension do you think is appropriate?

5    Because, again, let me just add the other question, which is,

6    again, I've got this motion for substantive consolidation.  If

7    it's granted -- and Mr. Taylor, you can chime in if you -- and

8    Ms. Wilson, you can chime in if you want here.

9         If it's granted, then one of these debtors has not had

10   a meeting of creditors because, again, I've got to -- no one's

11   asked me to continue the MOC date, but someone has to get

12   notice of the MOC date.  So I'm being asked to substantively

13   consolidate a debtor that's gone through the meeting of

14   creditors, the IDI, the claims bar date has passed, with a

15   debtor who hasn't gone through a meeting of creditors, hasn't

16   had an IDI, and no claims bar date.  So what does that do?

17        So does that mean I reopen the claims bar date for

18   everyone, Mr. Taylor, should I grant the request?

19        MR. TAYLOR:  So Your Honor, there are a number of

20   questions along those lines that we've discussed internally but

21   don't yet have proposed answers for.  I would assume, on the

22   IDI, there would be one that goes to debtors of KSMP -- or

23   creditors of KSMP.  And the bar date question is a good one.

24   We're still evaluating that ourselves.  Ms. Wilson should speak

25   as well, but that's my take.

1    MS. WILSON: That's my understanding as well, Your

2    Honor. I'm trying to figure out the logistics of if it, if the

3    estates were substantively consolidated, would there be a

4    supplemental bar date and how that would proceed.

5    THE COURT: Because then you may be giving people --

6    again, not that there's anything wrong with this, but you're

7    giving people who blew the first bar date a second bite at the

8    apple. And I don't know how you distinguish those creditors.

9    And I don't know how much time should be spent trying to

10   distinguish those creditors. Okay. So --

11   MS. BRADY: That's right, Your Honor. I just wanted

12   to add that I think -- I don't -- I can't -- sitting here

13   today, I don't know when the right time is to set that bar

14   date. But I think there's a concern -- or two concerns. One

15   is a lot of the creditors overlap, and whatever we do, we want

16   to --

17   THE COURT: Well, we don't -- I mean, we --

18   MS. BRADY: -- not create confusion between the two

19   estates.

20   THE COURT: Again, I -- we don't know if that's true

21   or not. We have no idea. We have no idea if Mr. Mattson

22   solicited -- or the creditors -- sorry -- if the creditors in

23   KS Mattson Partners overlap at all. I mean, at least I don't.

24   I mean, you folks probably have a much better -- obviously have

25   a much better or should have a much better idea than I do. But

Case: 24-10545   Doc# 1677-1   Filed: 07/01/25   Entered: 07/01/25 15:20:53   Page 12 of 27

1    I don't know. I mean, maybe he kept these two businesses, from

2    that perspective, distinct. Who knows?

3          MS. BRADY: Your Honor, I can say that we, as the KSMP

4    debtor, don't know. I think that there may have been some

5    information, in some of the proofs-of-interest that were filed,

6    that might glean some light on that. But I haven't seen those

7    yet, so I do not know the answer to that.

8          THE COURT: Okay.

9          MS. BRADY: And so I think that just kind of plays

10   into, before we go out with the bar date, I think, at the KSMP

11   level, we want to understand what the lay of the land is, what

12   the claims that have already been asserted in the other case

13   look like, because I understand there were some parties who

14   asserted claims against both debtors. And then also just I

15   don't want to -- I think there's a tension between setting a

16   bar date and having people do a bar date for KSMP. And if

17   there is a substantive consolidation, how does that look like?

18         So I think the marching orders for us, along with the

19   other parties in this situation, is to figure out the most

20   efficient and least confusing way to communicate with the

21   investors and creditors so that we get it right.

22         THE COURT: I agree. Okay. So let me -- so the

23   request to extend the deadline for filing schedules and

24   statement of financial affairs to August 8th is granted.

25         The bar date, again, I'll -- I'm going to continue

```
1   this motion.  And we'll pick a date.  And I may continue it to
2   the -- again, July -- when's the hearing on the motion for
3   substantive -- July 9th?
4              THE CLERK:  July 18th.
5              THE COURT:  July 18th.  Excuse me.
6              THE CLERK:  Yes.
7              THE COURT:  I'll continue that to July 18th.  But the
8   clerk's office has asked me what should be done with regard to
9   the meeting of creditors notice.
10             Mr. Shine, any comments?  Because, again --
11             MR. SHINE:  Your Honor, I --
12             THE COURT:  Go ahead.  I'm sorry.
13             MR. SHINE:  Your Honor, I don't have a date selected
14  yet.  I think we're working on that.
15             THE COURT:  No, that's not my question.  Can we set a
16  date?  I mean, again, I have -- the Court has to issue a notice
17  of a meeting of creditors date.  That's what we do.  But you
18  haven't picked a date.  Again, the clerk's office has asked me
19  essentially to ask you what do you want to do about this, about
20  the MOC, just hold it in abeyance until you contact them and
21  say set it for this date?
22             MR. SHINE:  Your Honor, I'll ensure that we reach out
23  to the clerk's office.
24             THE COURT:  Okay.  And it probably has to be in
25  conjunction -- yeah, please do.  And I'll tell them to tell me
```

Case: 24-10545    Doc# 1677-1    Filed: 07/01/25    Entered: 07/01/25 15:20:53    Page 14
of 27

```
1   or to remind me what the result of that is, or B, if they
2   haven't heard from you.
3           And you may need to do that in consultation with Ms.
4   Brady, Mr. Taylor, and Ms. Wilson's office because, again, the
5   notice goes out to the creditors' matrix, and that's
6   incomplete.  Again, a lot of moving parts here.  I just want to
7   make sure that everyone -- that people are working in sync.
8           Okay.  So the August 8th deadline for schedules and
9   statement of financial affairs, I'm continuing the request to
10  suspend the nongovernmental claims bar date to July 18th.  And
11  we will see how things proceed.
12          Let's call the LeFever Mattson matter now.
13          THE CLERK:  Yes, Your Honor.  Line item number 3,
14  LeFever Mattson, a California Corporation.
15          THE COURT:  Are the same parties appearing here?  Then
16  we can just --
17          MR. TAYLOR:  Yes, Your Honor.
18          MS. BRADY:  Yes, Your Honor.
19          THE COURT:  I see that Mr. Kaplan may have dropped
20  off.  But other than that, it looks as if the same parties are
21  appearing.  And the record should reflect that.
22          Okay.  This is the motion -- continued hearing on
23  KSMP's motion to designate it as a permitted party under the
24  claims order.  I think we were waiting to have Ms. Itkin, the
25  "interim" word removed from her title, which it has now been.
```

1    So is this still a live matter?

2             MS. BRADY:  Your Honor, I think we've submitted an

3    order.  Either we have or will be submitting an order that

4    would name us the permitted -- we have agreements with the

5    parties.

6             THE COURT:  Okay.

7             MS. BRADY:  So I think that we're resolved.

8             THE COURT:  I believe Mr. Wynne did submit an order.

9    I didn't sign it because we hadn't had this hearing yet.

10            MS. BRADY:  Yes.

11            THE COURT:  Okay.

12            MS. BRADY:  So my understanding is that we're all

13   resolved on this, and counsel will correct me if I'm wrong.

14            THE COURT:  Okay.  Let me.

15            MR. TAYLOR:  Agreed.

16            THE COURT:  Okay.  Now, the LeFever Mattson -- again,

17   I look at the docket every time it's on just to see what's

18   coming up.  And again, I know that I've got a motion for

19   substantive consolidation.  I've got fee applications.  And

20   I've got this motion for inter-debtor borrowing.

21            And just so that people are prepared, Mr. Taylor,

22   Keller Benvenutti is going to have to demonstrate to me,

23   obviously, that that is in the best interest of the estate.

24   And part of that process for me is what are these funds going

25   to be used for and how they're going to get repaid.  Because

1  I'm looking -- again, I do look at the docket when I have a

2  hearing.  And there have been numerous sales, but the net

3  proceeds of those sales are barely enough to pay the monthly

4  administrative expense of this case.

5          So someone is going to have to explain to me, at that

6  hearing, where these funds are going to be -- how these funds

7  are going to be consumed, how they're going to get repaid, and

8  whether, all of this work that's going to be done and funded by

9  these funds, what it's all going to lead to.  And by that I

10  mean, if this work isn't going to lead to some tangible return

11  to creditors, and perhaps equity, then I need to know this now,

12  because we're now a couple million dollars into this case.  I

13  need to know where this case is going.

14          Finding an answer to where all of this money went to

15  is a laudable goal, but an unsatisfactory one if it's not going

16  to result in a dividend.  And we're spending money so quickly,

17  at such a pace, that all of the sales proceeds -- and again, I

18  haven't seen any of the largest sales; I think they've all been

19  under five million -- it's being fully consumed by

20  administrative expenses.  So I'm not quite sure what this is

21  all going to lead to.  And again, this isn't a product by your

22  design but by the factors that led us to this place.

23          And finally --

24          MR. TAYLOR:  Your Honor?

25          THE COURT:  Finally, I've raised this before, and I'm

Case: 24-10545   Doc# 1677-1   Filed: 07/01/25   Entered: 07/01/25 15:20:53   Page 17
of 27

1 going to raise it again. Again, I'm just giving you fair

2 warning that these are questions that I'm going to need answers

3 to. Putting aside the substance of the motion, the borrowing

4 motion -- and again, all I've done is just look at it. I just

5 note these are questions that I have that I'd like answers to.

6 And again, I'm going to raise it again, which is I don't know

7 how Keller Benvenutti can be on both sides of these

8 transactions. I don't know how. But again, if it's

9 appropriate, then someone needs to tell me -- someone needs to

10 show me some case law saying it's appropriate, because this has

11 been an ongoing concern that I've had, and I think we need to

12 address it.

13         Mr. Taylor, you were about to say something? And

14 again, I'm just -- I have in no way, shape, or form concluded,

15 obviously, what the answers to these questions are. I'm just

16 telling you I have questions.

17         MR. TAYLOR: Fully understood. And frankly, it's very

18 helpful for us to hear this in advance of the hearing. I'm not

19 going to try to answer all of them now, just a couple of --

20         THE COURT: And I'm not expecting answers again,

21 because --

22         MR. TAYLOR: Yeah.

23         THE COURT: -- I'm just telling you these are

24 questions I'm going to have. That's all.

25         MR. TAYLOR: Yeah. So just briefly on the financial

Case: 24-10545   Doc# 1677-1   Filed: 07/01/25   Entered: 07/01/25 15:20:53   Page 18
of 27

1  aspect of the cases that you mentioned, we're quite focused on

2  that ourselves.  There is a budget that's attached to the

3  motion.  I think that's going to be spruced up and updated in

4  time for the hearing.  And I think we'll show that we've

5  plotted out when we expect property sales to happen, how much

6  we expect the net proceeds to be, and how we're going to pay

7  for things.  And sharing more of that for you, I think, will be

8  helpful.  And there's also the committee's substantive

9  consolidation motion, which only goes to KSMP and the LeFever

10  Mattson --

11          THE COURT:  Right.

12          MR. TAYLOR:  -- may be a preview, though, of a broader

13  substantive consolidation that I think we think may be helpful

14  on some of these fronts.

15          THE COURT:  Right.  Okay.

16          MR. TAYLOR:  So --

17          THE COURT:  No, I understand, but okay, this is a

18  question of where's the cart and where's the horse here, for

19  example, on your firm's fee application.  Again, you're on both

20  sides of every transaction that's been part of this case.  And

21  again, someone's going to have to explain to me how that fact

22  affects your firm's ability to seek fees, again, because there

23  is no motion for substantive consolidation in front of all

24  these cases.  Again, I'm just --

25          MR. TAYLOR:  Understood.

Case: 24-10545   Doc# 1677-1   Filed: 07/01/25   Entered: 07/01/25 15:20:53   Page 19
of 27

1          THE COURT:  I --

2          MR. TAYLOR:  And certainly we can provide law and

3    briefing on that.

4          THE COURT:  Right, because it's important for you,

5    it's important for me, it's important for the committee.  Okay.

6          MR. TAYLOR:  May I ask raise one housekeeping issue

7    that's --

8          THE COURT:  Sure.

9          MR. TAYLOR:  -- sort of a heads up before we close?

10         THE COURT:  Yep.

11         MR. TAYLOR:  So you've also seen on the docket that,

12   on May 25th, two equity interest holders in Live Oak filed a

13   trustee motion for Live Oak Investments, one of the debtors.

14   That motion was filed in the Live Oak case, contrary to the

15   joint administration order, which says everything should be

16   filed in the LeFever Mattson case.  And our concern is that --

17         THE COURT:  Talk to Mr. Kelly or Mr. --

18         MR. TAYLOR:  So we've --  yeah, that's where I'm

19   going.

20         THE COURT:  -- whoever filed it.

21         MR. TAYLOR:  We've sent Mr. Kelly -- I just want to

22   give you a preview just --

23         THE COURT:  No, no, I understand, Mr. Kelly's not here

24   and I don't want to --

25         MR. TAYLOR:  And Mr. Kelly has not, unfortunately,

Case: 24-10545   Doc# 1677-1   Filed: 07/01/25   Entered: 07/01/25 15:20:53   Page 20
of 27

```
 1   responded to our three emails, over the last month, asking him
 2   to file it there.  So there will be -- in addition to a
 3   substantive response in our opposition on Friday, there will be
 4   a motion to strike.
 5            THE COURT:  No, I understand, and --
 6            MR. TAYLOR:  Okay.
 7            THE COURT:  -- I'll deal with that when I see it.
 8   Okay.
 9            MR. TAYLOR:  I just wanted to give you a heads up.
10   That's it.
11            THE COURT:  I appreciate it.  Okay.  So I'll sign that
12   order, Ms. Brady, that Mr. Wynne submitted.  And that should
13   take care of that.
14            Okay.  Thank you all.
15            MS. BRADY:  Thank you, Your Honor.
16       (Whereupon these proceedings were concluded at 11:28 AM)
17
18
19
20
21
22
23
24
25
```

1

2                          I N D E X

3     RULINGS:                                        PAGE  LINE

4     Application to appoint Robbin Itkin as the       5     25

5     responsible individual is granted.

6     Request to extend the deadline for filing       12     22

7     schedules and statement of financial affairs

8     to August 8th is granted.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case: 24-10545   Doc# 1677-1   Filed: 07/01/25   Entered: 07/01/25 15:20:53   Page 22
of 27

1

2                    C E R T I F I C A T I O N

3

4    I, Sharona Shapiro, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8    *Sharona Shapiro*

9    _____

10   /s/ SHARONA SHAPIRO, CET-492

11

12   eScribers

13   7227 N. 16th Street, Suite #207

14   Phoenix, AZ 85020

15

16   Date:   June 26, 2025

17

18

19

20

21

22

23

24

25

## A

**abeyance (1)**
13:20
**ability (1)**
18:22
**accompli (1)**
8:8
**add (2)**
10:5;11:12
**addition (1)**
20:2
**additional (1)**
6:14
**address (1)**
17:12
**administration (1)**
19:15
**administrative (2)**
16:4,20
**advance (2)**
8:23;17:18
**affairs (4)**
6:7,19;12:24;14:9
**affect (1)**
7:15
**affects (1)**
18:22
**affiliated (1)**
4:23
**again (37)**
6:3;7:5,12;8:8,13,
18,20,21;10:5,6,10;
11:6,20;12:25;13:2,
10,16,18;14:4,6;
15:16,18;16:1,17,21;
17:1,1,4,6,6,8,14,20;
18:19,21,22,24
**against (2)**
9:23;12:14
**agree (2)**
9:14;12:22
**Agreed (1)**
15:15
**agreements (1)**
15:4
**ahead (4)**
5:3;8:5,16;13:12
**along (2)**
10:20;12:18
**Although (1)**
6:13
**amend (1)**
7:1
**amended (1)**
6:14
**amount (1)**
7:1
**anticipate (1)**
6:13
**apologize (1)**
5:2

**appearance (2)**
4:18;5:6
**appearances (1)**
4:6
**appearing (3)**
5:16;14:15,21
**apple (1)**
11:8
**application (2)**
6:1;18:19
**applications (1)**
15:19
**appoint (1)**
6:1
**appointment (1)**
5:23
**appreciate (1)**
20:11
**appropriate (4)**
9:16;10:4;17:9,10
**arms (1)**
9:2
**around (1)**
9:2
**aside (1)**
17:3
**aspect (1)**
18:1
**asserted (2)**
12:12,14
**assets (1)**
9:11
**assume (2)**
9:23;10:21
**assuming (1)**
8:4
**attached (1)**
18:2
**attorney (1)**
5:5
**attorneys (1)**
4:17
**August (4)**
6:22;7:14;12:24;
14:8
**authority (1)**
5:20

## B

**Bank (1)**
5:9
**bankruptcy (1)**
6:6
**bar (14)**
10:1,1,14,16,17,23;
11:4,7,13;12:10,16,
16,25;14:10
**barely (1)**
16:3
**behalf (1)**
5:16
**Benvenutti (3)**

4:22;15:22;17:7
**best (1)**
15:23
**better (3)**
11:24,25,25
**bite (1)**
11:7
**blew (1)**
11:7
**body (2)**
9:2,3
**books (1)**
6:23
**borrowing (2)**
15:20;17:3
**both (3)**
12:14;17:7;18:19
**BRADY (37)**
4:7,10,11,16,19;
5:18;6:3,10,11,13,16,
20;7:4,11,20;8:2,10,
15,16,17,19,25;9:9,
20,24;11:11,18;12:3,
9;14:4,18;15:2,7,10,
12;20:12,15
**briefing (1)**
19:3
**briefly (1)**
17:25
**bring (1)**
4:6
**broader (1)**
18:12
**Brooke (1)**
5:10
**budget (1)**
18:2
**businesses (1)**
12:1

## C

**calendar (1)**
5:19
**CALIFORNIA (2)**
4:1;14:14
**Call (2)**
4:3;14:12
**Can (11)**
4:7;7:21;9:5,17;
10:7,8;12:3;13:15;
14:16;17:7;19:2
**capital (1)**
5:14
**care (1)**
20:13
**Caroline (1)**
5:13
**cart (1)**
18:18
**case (8)**
12:12;16:4,12,13;
17:10;18:20;19:14,16

**cases (2)**
18:1,24
**certainly (1)**
19:2
**chime (2)**
10:7,8
**claims (8)**
10:1,14,16,17;
12:12,14;14:10,24
**CLERK (4)**
4:4;13:4,6;14:13
**clerk's (3)**
13:8,18,23
**close (1)**
19:9
**coming (1)**
15:18
**comments (1)**
13:10
**committee (4)**
5:11;7:2;9:6;19:5
**committee's (1)**
18:8
**common (1)**
9:20
**communicate (1)**
12:20
**communicating (1)**
9:7
**complement (1)**
4:17
**complete (1)**
10:3
**completely (1)**
6:25
**concern (3)**
11:14;17:11;19:16
**concerns (1)**
11:14
**concluded (2)**
17:14;20:16
**confusing (1)**
12:20
**confusion (1)**
11:18
**conjunction (1)**
13:25
**consolidate (1)**
10:13
**consolidated (1)**
11:3
**consolidation (13)**
7:7,13,15,18;8:13;
9:1,16;10:6;12:17;
15:19;18:9,13,23
**consultation (1)**
14:3
**consumed (2)**
16:7,19
**contact (1)**
13:20
**continue (5)**
6:14;10:11;12:25;

13:1,7
**continued (2)**
5:19;14:22
**continuing (1)**
14:9
**contrary (1)**
19:14
**copy (1)**
7:23
**Corporation (1)**
14:14
**counsel (3)**
4:11;7:21;15:13
**couple (2)**
16:12;17:19
**Court (60)**
4:3,9,15,17,20,24;
5:2,6,17;6:1,12,15,17;
7:3,5,12;8:1,8,11,16,
18,20;9:8,17,22,25;
11:5,17,20;12:8,22;
13:5,7,12,15,16,24;
14:15,19;15:6,8,11,
14,16;16:25;17:20,
23;18:11,15,17;19:1,
4,8,10,17,20,23;20:5,
7,11
**create (1)**
11:18
**creditor (5)**
5:14;7:23,24;9:2,3
**creditors (20)**
6:16;7:17,24;8:3,6;
9:11;10:2,10,14,15,
23;11:8,10,15,22,22;
12:21;13:9,17;16:11
**creditors' (3)**
6:9;10:3;14:5

## D

**date (23)**
8:12;10:1,1,11,12,
14,16,17,23;11:4,7,
14;12:10,16,16,25;
13:1,13,16,17,18,21;
14:10
**David (1)**
4:21
**days (2)**
6:20,21
**deadline (2)**
12:23;14:8
**deal (3)**
5:19;6:8;20:7
**debt (1)**
9:23
**debtor (6)**
7:9;9:17,18;10:13,
15;12:4
**debtors (6)**
4:23;5:12;10:9,22;
12:14;19:13

debtor's (3)
 5:20;6:5;8:21
declaration (1)
 5:22
defer (1)
 8:6
demonstrate (1)
 15:22
deny (1)
 7:9
design (1)
 16:22
designate (2)
 5:20;14:23
discussed (1)
 10:20
distinct (1)
 12:2
distinguish (2)
 11:8,10
dividend (1)
 16:16
docket (3)
 15:17;16:1;19:11
dollars (1)
 16:12
done (3)
 13:8;16:8;17:4
dropped (1)
 14:19

E

efficient (1)
 12:20
Either (1)
 15:3
else (1)
 5:6
emails (1)
 20:1
enough (1)
 16:3
ensure (1)
 13:22
equity (3)
 6:7;16:11;19:12
Erin (1)
 4:10
essentially (1)
 13:19
estate (2)
 9:15;15:23
estates (2)
 11:3,19
evaluate (1)
 9:1
evaluating (2)
 9:15;10:24
even (1)
 7:18
everyone (2)
 10:18;14:7

example (1)
 18:19
Excuse (1)
 13:5
expect (2)
 18:5,6
expecting (1)
 17:20
expense (1)
 16:4
expenses (1)
 16:20
explain (2)
 16:5;18:21
extend (2)
 6:5;12:23

F

fact (1)
 18:21
factors (1)
 16:22
fair (1)
 17:1
FAIRBANK (5)
 4:25;5:1,2,4,5
fait (1)
 8:8
fee (3)
 9:19;15:19;18:19
fees (1)
 18:22
few (2)
 5:18,18
figure (2)
 11:2;12:19
figured (1)
 9:13
file (6)
 6:6,18,24;8:12,22;
 20:2
filed (9)
 6:9;7:19,23;8:13;
 12:5;19:12,14,16,20
filing (1)
 12:23
finally (2)
 16:23,25
financial (5)
 6:7,18;12:24;14:9;
 17:25
find (1)
 6:14
Finding (1)
 16:14
firm's (2)
 18:19,22
first (3)
 5:19;6:8;11:7
five (1)
 16:19
focused (1)

18:1
folks (1)
 11:24
form (1)
 17:14
frankly (1)
 17:17
Friday (1)
 20:3
front (1)
 18:23
fronts (1)
 18:14
full (3)
 4:17;9:19;10:2
fully (3)
 6:13;16:19;17:17
funded (1)
 16:8
funds (4)
 15:24;16:6,6,9

G

gets (1)
 7:16
giving (4)
 8:23;11:5,7;17:1
glean (1)
 12:6
goal (1)
 16:15
goes (3)
 10:22;14:5;18:9
Good (10)
 4:7,10,21,25;5:8,10,
 13,15,17;10:23
grant (2)
 7:9;10:18
granted (4)
 6:2;10:7,9;12:24
group (1)
 7:25

H

handle (1)
 9:14
Hang (3)
 4:15,15,15
happen (1)
 18:5
heads (2)
 19:9;20:9
hear (2)
 4:7;17:18
heard (1)
 14:2
hearing (14)
 5:19;7:13,14;8:12;
 9:4,5,5;13:2;14:22;
 15:9;16:2,6;17:18;
 18:4

helpful (3)
 17:18;18:8,13
Hogan (1)
 4:11
hold (1)
 13:20
holders (2)
 6:8;19:12
Honor (29)
 4:4,6,7,10,21,25;
 5:4,8,10,13,15,24;
 6:20;8:25;9:4,14;
 10:19;11:2,11;12:3;
 13:11,13,22;14:13,17,
 18;15:2;16:24;20:15
hopefully (2)
 6:4;7:4
hoping (1)
 7:1
horse (1)
 18:18
housekeeping (1)
 19:6

I

idea (3)
 11:21,21,25
IDI (3)
 10:14,16,22
impact (2)
 7:12;9:3
important (3)
 19:4,5,5
incomplete (2)
 6:25;14:6
individual (3)
 4:12;5:21;6:2
information (2)
 6:16;12:5
initial (2)
 7:14;9:10
inter-debtor (1)
 15:20
interest (3)
 9:19;15:23;19:12
interim (1)
 14:25
internally (1)
 10:20
into (3)
 9:12;12:10;16:12
Investments (1)
 19:13
investors (1)
 12:21
issue (2)
 13:16;19:6
item (2)
 4:4;14:13
Itkin (3)
 4:12;5:20;14:24
Itkin's (1)

5:21

J

joint (1)
 19:15
Jones (1)
 5:11
July (8)
 8:4;9:5;13:2,3,4,5,
 7;14:10
JUNE (1)
 4:1

K

Kaplan (4)
 4:24;5:8,9;14:19
Keller (3)
 4:22;15:22;17:7
Kelly (3)
 19:17,21,25
Kelly's (1)
 19:23
kept (1)
 12:1
Kim (1)
 4:22
kind (1)
 12:9
knows (1)
 12:2
KS (4)
 4:4;5:5;7:17;11:23
KSMP (7)
 4:11;10:22,23;12:3,
 10,16;18:9
KSMP's (1)
 14:23

L

land (1)
 12:11
largest (1)
 16:18
last (2)
 9:4;20:1
laudable (1)
 16:15
law (2)
 17:10;19:2
lay (1)
 12:11
lead (3)
 16:9,10,21
leads (1)
 7:16
least (3)
 7:14;11:23;12:20
led (1)
 16:22
LeFever (8)

4:22;5:12;7:21;
14:12,14;15:16;18:9;
19:16
**level (1)**
12:11
**light (1)**
12:6
**likely (1)**
8:24
**Line (3)**
4:4,12;14:13
**lines (1)**
10:20
**list (1)**
6:7
**literally (1)**
6:23
**live (4)**
15:1;19:12,13,14
**logistics (1)**
11:2
**long (1)**
10:4
**look (6)**
6:4;12:13,17;15:17;
16:1;17:4
**looking (1)**
16:1
**looks (2)**
9:3;14:20
**looming (1)**
7:7
**lot (3)**
6:24;11:15;14:6
**Lovells (1)**
4:11
**LP (2)**
4:5;7:17

**M**

**marching (1)**
12:18
**matrix (6)**
6:9;7:23,24;10:2,3;
14:5
**Matson (1)**
5:5
**matter (3)**
9:10;14:12;15:1
**matters (2)**
4:14;5:18
**Mattson (12)**
4:4,22;5:12;7:17,
21;11:21,23;14:12,
14;15:16;18:10;19:16
**may (11)**
7:6;8:8;11:5;12:4;
13:1;14:3,19;18:12,
13;19:6,12
**maybe (1)**
12:1
**mean (9)**

6:6;8:18;10:17;
11:17,23,24;12:1;
13:16;16:10
**meeting (5)**
10:10,13,15;13:9,
17
**mentioned (2)**
5:18;18:1
**Micheline (2)**
4:25;5:5
**might (1)**
12:6
**million (2)**
16:12,19
**mind (1)**
6:17
**MOC (3)**
10:11,12;13:20
**money (3)**
6:25;16:14,16
**month (1)**
20:1
**monthly (1)**
16:3
**more (3)**
7:9;8:22;18:7
**morning (10)**
4:7,10,13,21,25;5:8,
10,13,15,17
**most (2)**
8:24;12:19
**motion (24)**
5:20;6:5;7:7,13,15,
18;8:7,12;9:2;10:6;
13:1,2;14:22,23;
15:18,20;17:3,4;18:3,
9,23;19:13,14;20:4
**moving (1)**
14:6
**much (6)**
6:17;11:9,24,25,25;
18:5

**N**

**name (1)**
15:4
**need (8)**
6:18;9:10,14;14:3;
16:11,13;17:2,11
**needs (3)**
9:13;17:9,9
**net (2)**
16:2;18:6
**new (1)**
8:3
**next (1)**
7:16
**nongovernmental (2)**
10:1;14:10
**note (1)**
17:5
**notice (5)**

8:23;10:12;13:9,16;
14:5
**number (3)**
4:4;10:19;14:13
**numerous (1)**
16:2

**O**

**Oak (3)**
19:12,13,14
**OAKLAND (1)**
4:1
**obviously (5)**
9:6,10;11:24;15:23;
17:15
**off (1)**
14:20
**office (4)**
13:8,18,23;14:4
**one (7)**
10:9,22,23;11:14;
16:15;19:6,13
**one's (1)**
10:10
**ongoing (1)**
17:11
**only (2)**
6:25;18:9
**oOo- (1)**
4:2
**open (1)**
9:7
**opportunity (1)**
7:2
**opposition (4)**
5:22,23,24;20:3
**order (10)**
4:3;5:25;6:3,21;
14:24;15:3,3,8;19:15;
20:12
**orders (1)**
12:18
**ourselves (2)**
10:24;18:2
**out (7)**
9:13;11:2;12:10,19;
13:22;14:5;18:5
**outgoing (1)**
5:5
**over (1)**
20:1
**overlap (2)**
11:15,23
**owns (2)**
9:17,18

**P**

**pace (1)**
16:17
**Pachulski (1)**
5:11

**part (3)**
9:15;15:24;18:20
**parties (5)**
12:13,19;14:15,20;
15:5
**Partners (1)**
4:5;5:5;7:17;11:23
**parts (1)**
14:6
**party (1)**
14:23
**passed (1)**
10:14
**pay (2)**
16:3;18:6
**people (5)**
11:5;7;12:16;14:7;
15:21
**perhaps (1)**
16:11
**permitted (2)**
14:23;15:4
**perspective (1)**
12:2
**Phillip (1)**
5:15
**pick (1)**
13:1
**picked (1)**
13:18
**place (1)**
16:22
**plays (1)**
12:9
**please (1)**
13:25
**plotted (1)**
18:5
**point (2)**
8:2;9:4
**preliminary (1)**
9:5
**prepared (1)**
15:21
**preview (2)**
18:12;19:22
**probably (5)**
8:3;10:2,3;11:24;
13:24
**proceed (2)**
11:4;14:11
**proceedings (1)**
20:16
**proceeds (3)**
16:3,17;18:6
**process (1)**
15:24
**product (1)**
16:21
**proofs-of-interest (1)**
12:5
**properties (2)**
9:19,21

**property (4)**
9:18,18,23;18:5
**proposed (3)**
4:11;5:25;10:21
**provide (1)**
19:2
**provided (1)**
7:22
**puts (2)**
6:21,22
**Putting (1)**
17:3

**Q**

**quickly (1)**
16:16
**quite (2)**
16:20;18:1

**R**

**raise (3)**
17:1,6;19:6
**raised (1)**
16:25
**raising (1)**
8:20
**reach (1)**
13:22
**read (1)**
6:17
**real (1)**
9:18
**really (1)**
9:1
**reason (2)**
7:8,9
**reasonable (2)**
7:1;8:22
**reconstructing (1)**
6:23
**record (1)**
14:21
**records (1)**
6:23
**reflect (1)**
14:21
**regard (1)**
13:8
**regardless (1)**
9:12
**relates (1)**
8:21
**relief (1)**
6:21
**remind (1)**
14:1
**removed (1)**
14:25
**reopen (1)**
10:17
**repaid (2)**

Case: 24-10545   Doc# 1677-1   Filed: 07/01/25   Entered: 07/01/25 15:20:53   Page 26
of 27

15:25;16:7
**repeat (1)**
8:21
**request (6)**
7:8;8:22;9:25;
10:18;12:23;14:9
**resolved (3)**
5:24;15:7,13
**responded (1)**
20:1
**response (1)**
20:3
**responsible (3)**
4:12;5:21;6:2
**result (2)**
14:1;16:16
**return (1)**
16:10
**Right (12)**
6:15;7:3,4;8:1,10;
9:17;11:11,13;12:21;
18:11,15;19:4
**Robbin (1)**
4:12
**Robert (1)**
5:8
**rule (2)**
8:9,11

## S

**sales (5)**
16:2,3,17,18;18:5
**same (2)**
14:15,20
**saying (2)**
7:8;17:10
**schedules (9)**
6:6,6,18,24;8:13,
22;9:12;12:23;14:8
**second (1)**
11:7
**secured (2)**
5:14;9:23
**security (1)**
6:7
**seek (1)**
18:22
**selected (1)**
13:13
**sense (1)**
6:24
**sent (1)**
19:21
**serve (1)**
8:5
**served (3)**
7:17,17,23
**service (1)**
8:6
**set (3)**
11:13;13:15,21
**setting (1)**

12:15
**shape (1)**
17:14
**sharing (1)**
18:7
**Shine (10)**
5:15,15,23,24;6:2,
3;13:10,11,13,22
**show (2)**
17:10;18:4
**sides (2)**
17:7;18:20
**sign (3)**
6:4;15:9;20:11
**simply (1)**
6:22
**SISCHO (2)**
5:13,14
**sitting (1)**
11:12
**situation (1)**
12:19
**sixty (2)**
6:20,21
**Socotra (1)**
5:14
**solicited (1)**
11:22
**someone (4)**
10:11;16:5;17:9,9
**someone's (1)**
18:21
**sorry (2)**
11:22;13:12
**sort (1)**
19:9
**speak (1)**
10:24
**spend (1)**
6:25
**spending (1)**
16:16
**spent (1)**
11:9
**spruced (1)**
18:3
**Stang (1)**
5:11
**statement (4)**
6:7,18;12:24;14:9
**statements (1)**
9:12
**States (1)**
5:16
**still (2)**
10:24;15:1
**strike (1)**
20:4
**sub-con (1)**
9:13
**submit (1)**
15:8
**submitted (2)**

15:2;20:12
**submitting (1)**
15:3
**substance (1)**
17:3
**substantive (15)**
7:7,13,15,18;8:12;
9:1,15;10:6;12:17;
13:3;15:19;18:8,13,
23;20:3
**substantively (2)**
10:12;11:3
**supplemental (3)**
5:21;8:5;11:4
**sure (4)**
8:4;14:7;16:20;
19:8
**suspend (2)**
10:1;14:10
**suspension (1)**
10:4
**sync (1)**
14:7

## T

**talk (3)**
9:6,7;19:17
**tangible (1)**
16:10
**Taylor (28)**
4:20,21,22;8:14;
10:7,18,19;14:4,17;
15:15,21;16:24;
17:13,17,22,25;18:12,
16,25;19:2,6,9,11,18,
21,25;20:6,9
**telling (2)**
17:16,23
**tenancy (1)**
9:20
**tension (1)**
12:15
**though (2)**
7:18;18:12
**three (1)**
20:1
**timely (1)**
6:9
**title (2)**
9:19;14:25
**today (4)**
4:14;5:7;7:6;11:13
**transaction (1)**
18:20
**transactions (1)**
17:8
**true (1)**
11:20
**Trustee (3)**
5:16,22;19:13
**try (1)**
17:19

**trying (2)**
11:2,9
**TUESDAY (1)**
4:1
**two (5)**
4:14;11:14,18;12:1;
19:12

## U

**Umpqua (1)**
5:9
**uncovered (1)**
8:3
**under (2)**
14:23;16:19
**understood (2)**
17:17;18:25
**unfortunately (1)**
19:25
**United (1)**
5:16
**unlikely (1)**
8:11
**unsatisfactory (1)**
16:15
**up (5)**
4:14;15:18;18:3;
19:9;20:9
**updated (1)**
18:3
**upload (2)**
6:3,3
**upon (1)**
7:24
**used (1)**
15:25

## W

**waiting (1)**
14:24
**warning (1)**
17:2
**way (2)**
12:20;17:14
**what's (2)**
9:15;15:17
**when's (1)**
13:2
**where's (2)**
18:18,18
**Whereupon (1)**
20:16
**whole (1)**
6:24
**willing (1)**
9:6
**Wilson (5)**
5:10,10;10:8,24;
11:1
**Wilson's (1)**
14:4

**word (1)**
14:25
**work (2)**
16:8,10
**working (2)**
13:14;14:7
**wrong (3)**
7:22;11:6;15:13
**Wynne (2)**
15:8;20:12

## Y

**Yep (2)**
4:16;19:10

## Z

**Ziehl (1)**
5:11

## 1

**11:05 (1)**
4:1
**11:28 (1)**
20:16
**16th (2)**
8:4;9:5
**18th (4)**
13:4,5,7;14:10

## 2

**2 (1)**
4:4
**2025 (1)**
4:1
**24 (1)**
4:1
**25th (1)**
19:12

## 3

**3 (1)**
14:13

## 8

**8th (4)**
6:22;7:14;12:24;
14:8

## 9

**9th (1)**
13:3

Case: 24-10545    Doc# 1677-1    Filed: 07/01/25    Entered: 07/01/25 15:20:53    Page 27
of 27