

Richard L. Wynne (Bar No. 120349)
richard.wynne@hoganlovells.com
Erin N. Brady (Bar No. 215038)
erin.brady@hoganlovells.com
Edward J. McNeilly (Bar No. 314588)
edward.mcneilly@hoganlovells.com
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601

Todd M. Schwartz (Bar No. 288895)
todd.schwartz@hoganlovells.com
HOGAN LOVELLS US LLP
855 Main St Suite 200
Redwood City, CA 94063
Telephone: (650) 463-4000
Facsimile: (650) 463-4199

*Attorneys for Debtor and Debtor in Possession*

**The following constitutes the order of the Court.**
**Signed: September 16, 2025**

_____
**Charles Novack**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SANTA ROSA DIVISION

| | |
|---|---|
| In re<br><br>LEFEVER MATTSON, a California corporation, et al.<br><br>Debtors.[1]<br>_____<br>In re<br><br>KS MATTSON PARTNERS, LP,<br><br>Debtor. | Case No. 24-10545 CN (Lead Case)<br><br>(Jointly Administered)<br><br>Chapter 11<br><br>**ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF DOUGLAS ELLIMAN AS REAL ESTATE BROKER** |

---

[1] The last four digits of LeFever Mattson's tax identification number are 7537. The last four digits of the tax identification number for KS Mattson Partners, LP ("KSMP") are 5060. KSMP's address for service is c/o Stapleton Group, 514 Via de la Valle, Solana Beach, CA 92075. The address for service on LeFever Mattson and all other Debtors is 6359 Auburn Blvd., Suite B, Citrus Heights, CA 9562. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://veritaglobal.net/LM.

Upon the application dated as of September 5, 2025 (the "Application")[1] of KS Mattson Partners, LP ("KSMP" or "Debtor KSMP") in this chapter 11 case for entry of an order, pursuant to sections 327(a) and 328(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to employ Douglas Elliman as real estate broker in this chapter 11 case; and this Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found and determined that notice of the Application as provided to the parties listed therein is reasonable and sufficient under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Application, and the Butler Declaration, and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and it appearing that Douglas Elliman neither holds nor represents any interest adverse to Debtor KSMP's estate; and it appearing that Douglas Elliman is "disinterested," as that term is defined in Bankruptcy Code section 101(14); and it appearing that the relief requested in the Application is in the best interests of Debtor KSMP, its estate, its creditors, its equity holders, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Application is granted as set forth herein.

---

[1] Capitalized terms not otherwise herein defined shall have the meanings given to such terms in the Application.

2

2.  In accordance with section 327(a) of the Bankruptcy Code, Debtor KSMP is authorized to employ and retain Douglas Elliman as real estate broker on the terms set forth in the Listing Agreement attached hereto as Exhibit 1.

3.  The terms of Douglas Elliman's compensation are approved pursuant to section 328 of the Bankruptcy Code, and Douglas Elliman shall be compensated in accordance with the terms of the Listing Agreement and any applicable orders entered by the Court.

4.  Douglas Elliman shall be paid from the proceeds of sale at the close of escrow of each individual property sold in accordance with the following Commission Schedule:

|  | Buyer's Agent Fee | Douglas Elliman Agent Fee up to and including $8 million | Douglas Elliman Agent Fee above $8 million | Maximum Commission up to and including $8 million | Maximum Commission above $8 million |
|---|---|---|---|---|---|
| **Commercial** | 1.5% | 2.5% | 2.0% | 4.0% | 3.5% |
| **Land** | 2.0% | | | 4.5% | 4.0% |
| **Residential** | 2.0% | | | 4.5% | 4.0% |
| **Mixed-Use Commercial** | 1.5% | | | 4.0% | 3.5% |

5.  Debtor KSMP is authorized to add additional properties to the Listing Agreement by filing with the Court a notice of amendment identifying any deviations from the existing terms of the Listing Agreement, and without the need for further application to or order of the Court, unless such amendment provides for a commission rate higher than that approved by this Order, in which case Debtor KSMP shall file a separate, supplemental application.

6.  If Douglas Elliman acts as a broker for any properties in which Debtor KSMP is a tenant in common with other co-owners, such co-owners shall be responsible for their proportional share of the Maximum Commission upon sale of a property, which amount shall be paid from any proceeds they would otherwise receive from the sale transaction.

3

7. Because Douglas Elliman is a large brokerage firm, it is possible that a different Douglas Elliman agent than the Assigned Agent may represent the buyer in a particular transaction. In that case, the Assigned Agent (and, if applicable, the buyer's agent) will split the maximum commission amount. However, the Assigned Agent may not represent both Debtor KSMP and the buyer without prior written consent from Debtor KSMP

8. Douglas Elliman shall not seek compensation or reimbursement for, and shall not be entitled to, costs and expenses incurred in connection with the rendering of its services in this chapter 11 case.

9. Douglas Elliman shall use its reasonable efforts to avoid any duplication of services provided by any of Debtor KSMP's other retained professionals.

10. If there is any inconsistency between the terms of the Application, the Butler Declaration, and this Order, this Order shall govern.

11. This Court shall retain jurisdiction with respect to all matters arising or related to the interpretation or implementation of this Order or the Listing Agreement.

** END OF ORDER **

**Exhibit 1**

**(Listing Agreement)**

5

# SALE LISTING AGREEMENT

This Agreement ("**Agreement**") is made by and between Douglas Elliman of California, Inc. ("Broker") and KS Mattson Partners, LP ("Seller"). Seller is a debtor and debtor in possession in proceedings under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"), which is being jointly administered as *In re LeFever Mattson, a California corporation and In re KS Mattson Partners, LP*, Case No. 24-10545 (CN) (the "Bankruptcy Case").

1. **Broker as Exclusive Selling Agent.** Seller hereby grants to Broker the exclusive right to sell the property described in **Exhibit A** attached hereto (the "**Property**"), together with all improvements now or hereafter made on or to the Property. Seller agrees to promptly disclose to Broker any personal property to be included in the sale. Seller authorizes Broker to insert or correct the legal description without obtaining Seller's additional signature. The term (the "**Term**") of this Agreement shall commence on the date of execution of this agreement (the "**Effective Date**") and continuing through midnight on January 31, 2026, or such earlier date on which this Agreement is terminated pursuant to the terms hereof (the "**Termination Date**"). Broker shall use its commercially bestefforts to sell the Property during the Term. Broker is authorized to employ, in its sole and absolute discretion, one or more cooperating brokers or subagents (or both) to assist Broker in performing Broker's services under this Agreement.

2. **Term of Sale.** The Seller will set list prices as outlined in Exhibit A, and Broker will pursue the highest and best offering prices, which shall be payable by the Purchaser (as defined below), in cash. Any offer to purchase the Property may contain normal and customary contingencies such as the Purchaser's approval of a preliminary title report, survey, feasibility studies and existing leases.

3. **Seller's Approval.** The acceptance of any offer to purchase the Property shall be subject to Seller's approval.

4. **Negotiations and Cooperation.** All inquiries and offers which Seller receives shall be referred to Broker and all negotiations shall be conducted solely by Broker or under its direction. Seller shall cooperate fully with Broker and shall provide Broker access to the Property at all reasonable times. Broker shall promptly inform Seller of all inquiries from or on behalf of prospective Purchasers and shall respond on Seller's behalf by email, letter, telephone call or, when possible, personal contact. Broker will immediately submit to Seller any/all written or verbal offers to purchase the Property received by Broker and will promptly notify Seller of any pending offers to purchase the Property of which Broker may be aware. Notwithstanding the foregoing, Seller may negotiate directly with any potential Purchaser without Broker' assistance or participation, but any such direct negotiation shall not reduce Broker' right to a commission hereunder and Seller shall promptly notify Broker of any such direct negotiation.

5. **Advertising.** Unless expressly agreed otherwise in writing, commencing on the Effective Date, Broker is authorized to advertise the Property, subject to Seller's approval. Industry standard single-page advertising flyers prepared by the Broker shall be paid for by the Broker. Broker shall have the right to place signs advertising the Property for sale on the

Properties at Broker' expense. Any non-industry standard marketing material must be approved by Seller and paid for by the Broker. Seller shall not unreasonably withhold, condition, and/or delay approval of any marketing material or any related materials. Seller shall provide written approval and/or comments within five (5) calendar days of submission. If Seller fails to respond within such five (5) calendar days of submission, the materials shall be deemed approved.

    i. **Included Sale Items** - _____.

    ii. **Excluded Sale Items** - _____.

6. **Cooperation with Other Broker.** Seller understands and agrees that Broker may solicit the cooperation of other real estate brokers. Seller shall pay a commission to a Purchaser's Agent as specified in the Purchaser's Agent column in **Exhibit B;** provided, however that the commission amount will be subject to negotiation between Purchaser and Seller as reflected in the Contract and subject to approval of the Court. If Broker represents Purchaser and enters a dual agency agreement with the Purchaser, Seller shall pay a commission to Broker equal to the percentage of the purchase price as specified in Purchaser's Agent column in **Exhibit B**, determined for each property using the actual sale price; provided, however, Whitney Benzian, a subagent of Broker, shall not represent any buyer of the Property. Payment of said commission to Broker shall be subject to the same conditions found in Section 8.

7. **Extension.** If, during the Term of this Agreement, an escrow is opened or negotiations involving the sale, transfer or conveyance of the Property have commenced and are continuing, then, except as set forth in Section 18 below, solely as it relates to the applicable Property, the Term of this Agreement shall be extended through the closing of such escrow, the termination of such negotiations, or the consummation of such transaction.

8. **Sale Subject to Overbid Procedures.** The Broker understands and agrees that the sale of the Property may be subject to overbid requirement which provide for the sale of the Property to a "Qualified Bidder," as defined therein, and would require bids to be submitted within the allotted date after receipt of all bids that matches or exceeds the highest bid submitted to that date by a Qualified Bidder. This provision shall not impact Broker's right to receive a commission, as set forth in Sections 9 and 10, below.

9. **Commissions.** Seller agrees to pay a commission to the Broker equal to the percentage of the purchase price specified Seller's Agent column in **Exhibit B**, determined for each property using the actual sale price specified herein. Seller shall pay commission to Broker if a purchaser (or its successors and/or assigns, a "**Purchaser**"), enters into a purchase and sale contract for the Properties, as agreed to by Seller in its sole discretion (a "**Contract**") and the sale of the Properties is closed and consummated in accordance with such Contract, or if Seller acts in bad faith with respect to the Contract or closing the Property or otherwise breaches a material term of this Agreement. The commission contemplated in this Section 9 will be payable only from the sales proceeds received by Seller, provided, however, that if the sales proceeds are insufficient to cover the full amount of the commission, Seller shall remain liable for the unpaid balance, which shall be payable in full upon closing. Notwithstanding anything to the contrary contained herein, no commission will be earned, due or payable hereunder: (a) in connection with a sale to Broker or any affiliate of Broker; (b) if a Contract

is terminated pursuant to a right granted therein or by the mutual agreement of Seller and Purchaser; or (c) the proposed sale fails to close for any reason, including the default of either Seller or Purchaser under the applicable Contract (except if by Seller in bad faith); or (d) the failure of the Court to approve the sale of the Property.

To secure payment of any commissions due under this Agreement, Seller grants Broker a security interest of lien in the proceeds of the sale of any Property held in escrow to the extent permitted by applicable law and Bankruptcy Court orders. Seller shall instruct the escrow or closing agent to hold sufficient funds to pay Broker's commission at closing and pay Broker directly from such funds upon closing.

10. **Payment of Commissions.** Any commission due pursuant to Section 9 shall be payable only upon the closing of a sale of the Property as set forth in Section 9. Broker is authorized to provide a copy of this Agreement to any escrow or closing agent working on such transaction, and such escrow or closing agent is hereby irrevocably instructed by Seller to pay Broker' commissions from any such funds or proceeds available.

11. **If a Seller fails to pay any amount due to Broker under this Agreement within 10 days after written notice of such failure from Broker to Seller, then Broker shall have the right, in addition to all of other rights and remedies at law or in equity, to charge interest on any amount not paid when due from the due date through the date of payment at a rate of interest equal to the lesser of 18% per annum or the highest interest rate permitted by applicable law.**

12. **Broker's Authority.** The Broker may not enter into any agreement with any prospective purchaser, real estate broker or any other person in the name of, on behalf of or otherwise binding on Seller, nor may the Broker subject Seller to any other obligations or liabilities, and the Broker shall not represent that it has any authority to do so. The Broker shall make no representations or warranties, express or implied, as to the condition of the Properties or about improvements on the Property, or their suitability or fitness for the purposes intended by any Purchaser. The Broker acknowledges and agrees that Seller is selling the Property "as is, where is, with all faults" and Broker shall so advise each and every prospective purchaser. Broker must also advise such prospective Purchasers to conduct their own independent evaluation of the Property. Notwithstanding the foregoing, Seller acknowledges that Broker has a statutory duty to disclose known material facts pertaining to the Property, and for residential 1-4 unit properties, Broker must conduct a diligent and competent visual inspection of the accessible areas of the Property and disclose any material observations to the Purchaser. Broker may not accept earnest money from any prospective Purchaser. If earnest money paid or pledged by a prospective Purchaser is forfeited by that Purchaser, Broker may not claim any portion of such forfeited earnest money. Broker acknowledges and agrees that no agreement or terms negotiated by Broker with any prospective Purchaser will bind Seller unless and until incorporated into a written Contract executed and delivered by the Purchaser and Seller and approved by the Bankruptcy Court. This Agreement supersedes and controls terms for any commission or fee provided in any Contract.

13. **Brokerage Services Only.** It is expressly acknowledged that this Agreement is for Broker's real estate brokerage services only, and the Broker' other service lines, including without limitation, assets services, project management, and appraisal, are not a part of the scope of this Agreement.

\\4132-3614-4479 v5

Docusign Envelope ID: A9E279CC-0308-4CA3-88AB-393D1C823B58

14. **Compliance with Laws; Indemnification.** In performing its obligations under this Agreement, Broker will comply with all applicable laws and subscribe to the highest ethical and business standards of the real estate practice. Broker shall indemnify and hold harmless the Seller, and its affiliates and their respective officers, directors, employees, agents, and representatives (collectively, the "**Seller Indemnified Parties**") from and against all demands, liabilities, damages, costs, expenses and causes of action arising as a result of the gross negligence or willful misconduct of Broker, or Broker' agents, servants, or employees in acting as Seller's agent pursuant to this Agreement.

15. **No Discrimination.** The Parties acknowledge that it is illegal for either Seller or Broker to refuse to display, sell or lease the Properties to any person because of race, color, religion, national origin, sex, marital status or physical disability. The parties agree that the Properties will be offered in compliance with all applicable anti-discrimination laws.

16. **Seller's Warranty.** Seller warrants that Seller has full authority to execute this Agreement, and to sell the Property, subject to the necessary approvals. The person(s) executing this Agreement on behalf of Seller warrant(s) that such person(s) have full authority to do so and in so doing to bind Seller. Notwithstanding the foregoing, Seller does not warrant title to the Property.

    Seller confirms that following the full execution of this Agreement, the amount of the purchase price and any other terms of the sale of the Properties set forth in this Agreement shall not be deemed confidential information and Seller authorizes disclosure of the same.

    Seller further represents that the Property is not the subject of an exclusive agreement for sale with any other real estate broker and agree that it will not be during the Term. Broker acknowledges that Seller is entering or has entered into a Lease Listing Agreement Exclusive Authorization to Lease or Rent with Surf Vacation Rentals for the rental of the Property.

17. **Broker's Representations, Covenant and Warranties.** The Broker hereby makes the following representations, warranties and covenants to Seller, all of which shall survive the execution and delivery of this Agreement.

    i. Broker is duly organized, are validly existing, is in good standing under the laws of the state of its formation or incorporation, and in each state in which it is currently doing business and have complied with all applicable laws in order to conduct business in such states related to the services under this Agreement. Broker covenants to use its best efforts to comply with all applicable laws in order to conduct business in the state or states where the Property is located. Broker has all power and authority required to execute, deliver and perform this Agreement. Broker has sufficient staff and other resources to carry out Broker's duties hereunder in a prompt, efficient, and diligent manner;

    ii. The execution, delivery, and performance of this Agreement have been duly authorized by all necessary action on the part of Broker;

    iii. This Agreement constitutes a legal, valid, and binding agreement of Broker, enforceable against the Broker in accordance with its terms, except as limited by bankruptcy, insolvency, receivership and similar laws from time to time in effect; and

iv. Broker have obtained and will maintain in good standing during the Term all licenses and permits necessary to legally and validly execute, deliver and perform this Agreement.

**18. Termination.**

(a) This Agreement shall immediately terminate without penalty upon the occurrence of any of the following events:
  i. Seller is required by final order of the Bankruptcy Court or other competent legal authority to surrender its authority to sell the Property or terminate this Agreement; or
  ii. a legal event or unforeseen circumstance occurs which, in Seller's reasonable discretion and in good faith, requires the sale process to be suspended or stopped or this Agreement terminated; or
  iii. The Bankruptcy Case is dismissed, converted, or otherwise materially altered such that Seller no longer has authority to sell the Property under this Agreement.

(b) Notwithstanding any termination under this Section, Broker's right to commissions and fees pursuant to Section 9 shall survive termination to the extent such commissions are earned or deemed earned in accordance herewith as of the date of termination, including commissions payable on sales consummated after termination if such sales result from Broker's efforts during the Term as provided herein or within any applicable protection period set forth herein in accordance with the terms hereof.

(c) Seller shall provide Broker with written notice describing in reasonable detail the legal event or circumstance triggering termination as soon as practicable.

(d) Termination under this Section shall not relieve Seller from its obligations to cooperate with Broker to the extent reasonably necessary to effectuate any pending transaction or to pay commissions earned or due except as otherwise required by law, including pursuant to the bankruptcy proceeding.

**19. Term: Protection Period.**

(a) Unless sooner terminated as provided in this Agreement, this Agreement shall terminate at the end of the Term.

(b) This Agreement shall terminate automatically upon the Termination Date. Seller shall also have the right upon 10 days' prior written notice to terminate this Agreement as to one or more or all of the Properties. Upon termination of this Agreement as provided in this Section, Broker shall promptly deliver to Sellers all marketing materials and keys pertaining to the Premises in Broker's possession.

(c) If Broker materially breaches this Agreement, Seller shall notify Broker in writing of such breach in reasonable detail. If Broker fails to cure such breach within 30 days of its receipt of such notice, then Sellers may, in addition to any other remedies that Sellers may have, terminate this Agreement (except as otherwise specifically provided) by written notice to Broker.

(d) If this Agreement is terminated, Broker shall provide Seller with a list of prospective purchasers who have presented a written offer for the purchase of the Property during the

Term. If any purchaser and/or any party (or affiliate of parties, or anyone acting on such party's behalf, directly or indirectly) specified on such list execute a written Contract within 90 days after the Agreement termination then Broker shall be deemed to be the procuring cause and paid a fee in conjunction with such Contract according to the fees and timing set forth in Section 9. Broker shall have no right to a fee if any such Contract is executed after such 90-day period. Notwithstanding anything in this Agreement to the contrary, Section 9 shall survive any termination of this Agreement.

20. **Negotiation and Construction.** This Agreement and each of the terms and provisions hereof have been negotiated between the parties, and the language in all parts of this Agreement shall, in all cases, be construed according to its fair meaning and not strictly for or against either party.

21. **Entire Agreement.** This Agreement sets forth the entirety of the agreement between the parties regarding sale of the Property.

22. **Counterparts.** This Agreement may be executed in a number of counterparts and evidenced by facsimile, PDF format or similarly-imaged signatures, each of which will be deemed an original and all of which, when taken together, will constitute one and the same Agreement.

23. **Seller Rights Preserved.** Nothing in this Agreement shall modify or otherwise impact the rights, obligations, protections, or remedies that Seller is entitled to under the Bankruptcy Code and the Chapter 11 Case.

24. **Bankruptcy Court Approval and Compliance.** Seller shall be solely responsible for promptly seeking Bankruptcy Court's approval of this Agreement and the commissions specified herein. Seller shall use commercially reasonable efforts to obtain such approval as soon as reasonably practicable and shall keep Broker reasonably informed of the status of any related motions or proceedings. Broker shall cooperate in good faith with any filings or testimony reasonably required to support Seller's application for approval.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

Seller:
KS Mattson Partners, LP

By _____  By _____
Name: Robbin L. Itkin         Name: _____
Title: Responsible Individual  Title: _____
Address: c/o Hogan Lovells US LLP, 1999 Avenue of the Stars, Suite 1400, Los Angeles, CA 90067 (Attn: Erin N. Brady)
Address: _____

6

Listing Agreement
KSMP – Douglas Elliman

\\4132-3614-4479 v5

Date: _____ Date: _____

Telephone: (310) 738-9561 Telephone: _____

**Listing Broker:**
**Douglas Elliman of California, Inc.**

By: *Whitney Benzian* (DocuSigned by: 254AE9369605463...)

Name: Whitney Benzian

Title: Assigned Subagent

Address: 853 Camino Del Mar, Ste 100

Del Mar, CA 92014

Date: 8/16/2025

Telephone: 619-261-5374

7  Listing Agreement
KSMP – Douglas Elliman

\\4132-3614-4479 v5

Case: 24-10545   Doc# 2357   Filed: 09/16/25   Entered: 09/16/25 19:46:06   Page 12 of 15

# EXHIBIT A
## Property List

| Address | City | County | APN | List Price |
|---|---|---|---|---|
| 1834-1836 Ocean | Del Mar | San Diego | 299-147-05 | $10,500,000 |
| 454 15th Street | Del Mar | San Diego | 299-280-29 | $4,800,000 |
| 531 Camino del Mar | Del Mar | San Diego | 300-331-14-01 | $3,995,000 |
| 533 Camino del Mar | Del Mar | San Diego | 300-331-14-02 | $3,995,000 |

Exhibit A                                         Listing Agreement
                                                  KSMP- Douglas Elliman

\\4132-3614-4479 v5

**EXHIBIT B**
**Broker's Commission Matrix**

<u>**Gross Commission to be paid by Seller**</u>

|  | Commission to Seller's Agent | Commission to Purchaser's Agent |
|---|---|---|
| Sale price is less than or equal to $8 million | 2.50% | 1.50% (Commercial)<br>2.00% (Land)<br>2.00% (Residential)<br>1.50% (Mixed Use Comm) |
| Sale price exceeds $8 million | 2.00% | 1.50% (all types) |

Exhibit B                                                                                           Listing Agreement
                                                                                                          KSMP- Douglas Elliman

\\4132-3614-4479 v5

**COURT SERVICE LIST**

ECF Parties

Mail service will be handled by counsel.