1 | STAN ROMAN (State Bar No. 87652)
GREGG M. FICKS (State Bar No. 148093)
2 | FREDRICK C. CROMBIE (State Bar No. 244051)
FRANKLIN S. KRBECHEK (State Bar No. 322170)
3 | COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
4 | San Francisco, California 94104-5500
Telephone: 415.391.4800
5 | Facsimile: 415.989.1663
Email:    ef-sgr@cpdb.com
6 |          ef-gmf@cpdb.com
          ef-fcc@cpdb.com
7 |          ef-fsk@cpdb.com

8 | Attorneys for Timothy J. LeFever

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **NORTHERN DISTRICT OF CALIFORNIA**

11 | **SANTA ROSA DIVISION**

| | |
|---|---|
| In re: | Case No. 24-10545 (CN), *et seq.*<br>Jointly Administered |
| LEFEVER MATTSON, a California corporation, *et al.*, | Chapter 11 |
| Debtors. | **TIMOTHY J. LEFEVER'S OMNIBUS STATEMENT AND CONDITIONAL OBJECTION TO JOINT MOTIONS OF LFM DEBTORS, DEBTOR KSMP, AND THE COMMITTEE TO APPROVE ENTRY INTO AND PERFORMANCE UNDER MULTIPLE LENDER SETTLEMENT AGREEMENTS** |
| In re: | **Date**:    February 26, 2026<br>**Time**:    10:00 a.m.<br>**[Related to Docket No. 3608]** |
| KS MATTSON PARTNERS, LP | **Date**:    March 4, 2026<br>**Time**:    1:00 p.m.<br>**[Related to Docket Nos. 3654, 3659, 3661]** |
| Debtor. | **AND** |
| | **Date**: March 6, 2026<br>**Time**: 11:00 a.m.<br>**[Related to Docket No. 3682]** |
| | **Place**:    United States Bankruptcy Court<br>1300 Clay Street, Courtroom 215<br>Oakland, CA 94612 |
| | **Judge**:    Hon. Charles Novack |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION.................................................................................1

II.    SUMMARY OF FACTS........................................................................2

       A.    Case Background.......................................................................2

       B.    The LeFever Settlement Agreement ...........................................4

       C.    The Lender Settlement Agreements ............................................6

III.   STATEMENT AND CONDITIONAL OBJECTION ...............................7

       A.    The Court's Order Approving the LeFever Settlement Agreement,
             and Any Court Orders Approving the Lender Settlement
             Agreements, Should Contain the Clarifying Terms Requested by
             Mr. LeFever Herein, or Alternatively, the Court Should Deny the
             Lender Settlement Motions .......................................................7

       B.    Any Effort by the Plan Proponents to Collect, Directly or Indirectly,
             Additional Claims and Sums From Mr. LeFever Would Breach the
             Covenant of Good Faith and Fair Dealing Under the LeFever
             Settlement Agreement ............................................................10

       C.    The Court Should Approve the LeFever Settlement Agreement With
             the Additions to the Order as Requested Herein, But Should Deny
             Approval of the Lender Settlement Agreements Without Those
             Additions Because Absent Those Protections, the Plan Proponents
             Cannot Establish That the Lender Settlement Agreements Do Not
             Violate the LeFever Settlement Agreement, and That the Plan
             Proponents and Lenders Entered Into the Lender Settlement
             Agreements Fair and Equitably, and in Good Faith ....................11

IV.    CONCLUSION .................................................................................11

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Timothy J. LeFever, creditor, interest holder, and party-in-interest in the above-captioned bankruptcy cases, files this Statement and Conditional Objection to the following Joint Motions of LFM Debtors, Debtor KSMP, and the Committee (collectively, the "**Lender Settlement Motions**"):

| Date Filed | Docket No. | Hearing Date | Motion |
|---|---|---|---|
| 2/5/2026 | 3608 | 2/26/2026 10:00 a.m. | Joint Motion of LFM Debtors, Debtor KSMP, and the Committee to Approve Entry Into and Performance Under the Columbia Bank Settlement Agreement |
| 2/11/2026 | 3654 | 3/4/2026 1:00 p.m. | Joint Application to Compromise Controversy with Fannie Mae Filed by Creditor Committee Official Committee of Unsecured Creditors |
| 2/11/2026 | 3659 | 3/4/2026 1:00 p.m. | Application to Compromise Controversy with Comerica Bank Filed by Creditor Committee Official Committee of Unsecured Creditors |
| 2/11/2026 | 3661 | 3/4/2026 1:00 p.m. | Joint Application to Compromise Controversy with California Bank of Commerce Filed by Creditor Committee Official Committee of Unsecured Creditors |
| 2/13/2026 | 3682 | 3/6/2026 11:00 a.m. | Joint Motion of LFM Debtors, Debtor KSMP and the Committee to Approve Entry Into and Performance Under the Wilmington Trust Settlement Agreement |

Mr. LeFever also will be filing a similar Statement and Conditional Objection in connection with the Joint Motion of LFM Debtors, Debtor KSMP, and the Committee to Approve Entry Into and Performance under Settlement Agreements with Timothy J. LeFever and Certain of his Affiliates [Docket No. 3583] (the "**LeFever Settlement Motion**") discussed herein.

## I.    <u>INTRODUCTION</u>

Following two days of JAMS mediation and negotiation and documentation of a Settlement Agreement (the "**LeFever Settlement Agreement**") between Timothy J. LeFever and the Plan Proponents in these bankruptcy cases, *i.e.*, the LeFever Mattson, *et al.* debtors (the "**LM Debtors**"), debtor KS Mattson Partners, LP ("**KSMP**"), and the Official Committee of Unsecured Creditors (the "**Creditors Committee**" or the "**Committee**") (collectively, the "**Plan Proponents**"), the Plan Proponents filed the Lender Settlement Motions seeking approval of

COBLENTZ PATCH DUFFY & BASS LLP

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

settlement agreements with various lenders identified in the Lender Settlement Motions, and again below (the "**Lender Settlement Agreements**"). At least three of the Lender Settlements Agreement would materially contradict and violate the terms of the LeFever Settlement Agreement, unless the Court's Order approving the LeFever Settlement Agreement, and any Orders approving the Lender Settlement Agreements, include language confirming the protections and releases Mr. LeFever is entitled to under the LeFever Settlement Agreement, as discussed below. Without that, Court approval of the Lender Settlement Agreements should be denied under applicable Ninth Circuit standards.

Mr. LeFever notes at the outset of this Statement/Conditional Opposition that he is ready, willing, and able to perform under the LeFever Settlement Agreement on the Effective Date[1] thereof, and wants the Court to approve the LeFever Settlement Agreement under its terms. But that approval can only be reconciled with any approval of the Lender Settlement Agreements under Orders that prohibit the Plan Proponents from utilizing the Lender Settlement Agreements to directly or indirectly acquire actionable rights in further claims against Mr. LeFever that the Plan Proponents have released under the LeFever Settlement Agreement, and directly or indirectly extract additional amounts from Mr. LeFever on claims, demands, debts, liabilities and obligations that the Plan Proponents have released under the LeFever Settlement Agreement.

## II. SUMMARY OF FACTS

### A. Case Background

Mr. LeFever is 50 percent owner of LeFever Mattson, and holds substantial unsecured claims against LeFever Mattson, including claims for unpaid compensation, claims for indemnity (including claims for contingent Guarantor liability), and claims for repayment of loans and advances he made to LeFever Mattson from personal funds, which claims, at least in part, are reflected in the bankruptcy Schedules and records of the LM Debtors, and the Proofs of Claims Mr. Lever has filed in these bankruptcy cases. Mr. LeFever and his wife also are investors who

---

[1] Capitalized terms not defined herein typically have the same meanings as in the LeFever Settlement Agreement.

1  hold limited partnership interests (and/or LLC memberships, as applicable) in several of the

2  limited partnership and/or limited liability company LM Debtors.

3       Kenneth Mattson, *not* Mr. LeFever, engaged in the fraud that necessitated the filing of

4  these bankruptcy cases, which fraud Mr. Mattson secreted from Mr. LeFever and the LM Debtors.

5  See, *e.g.*, Indictment at Docket No. 1 in *U.S. v. Mattson* (N.D. Cal. Case No. CR25-00126 CRB)[2]

6  ("For more than a decade, defendant KENNETH W. MATTSON orchestrated and operated a

7  scheme whereby he fraudulently solicited and obtained millions of dollars in investments from

8  hundreds of investors . . . *MATTSON kept these investments secret from LM [LeFever Mattson]*,

9  Home Tax, other owners and principals, and the record limited partners of the LM LPs. . .

10  *MATTSON concealed these 'off-books' transactions from LM* and Home Tax.)" (emphasis added);

11  Complaint at Docket No. 1 in *S.E.C. v. Mattson, et. al.*, (N.D. Cal. Case No. 3:25-cv-04387)[3]

12  ("since around January 2020, Mattson fraudulently raised more than $46 million from

13  approximately 200 investors . . . *Mattson took deceptive steps to hide his fraudulent scheme from*

14  *people associated with LeFever Mattson*, including by using a personal post office box to receive

15  documents from investors, receiving investor funds and sending purported distributions from a

16  bank account in the name of LeFever Mattson that only Mattson could fully access, and

17  instructing his personal assistant not to discuss the defrauded investors with anyone else at

18  LeFever Mattson.") (emphasis added).

19       After discovering the fraud, it was Mr. LeFever who reported Mr. Mattson to the

20  authorities.  When the LM Debtors and/or their Chief Restructuring Officer make statements about

21  "the Debtors" or "LeFever Mattson" taking pre-petition action to protect investors and creditors of

22  LeFever Mattson, *et al.* by retaining DSI/Bradley Sharp as Chief Restructuring Officer, and by

23  filing these bankruptcy cases in order to preserve these estates, they are referring to pre-petition

24  actions taken by Mr. LeFever.  (See, *e.g.* Declaration of Bradley Sharp in Support of Debtors'

25  Opposition to Motion to Appoint Chapter 11 Trustee for Debtor Live Oak Investments, LP

26

27  [2] Copy also filed under Docket Number 1512 in these bankruptcy cases.

28  [3] Copy also filed under Docket Number 1512 in these bankruptcy cases.

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1  (Docket No. 1670) at p.2, lines 18-22 ("After realizing the extent and scope of suspect transactions

2  propagated by Mr. Mattson, the Debtors determined that it was in the collective best interest of the

3  Debtors and their stakeholders to file these Chapter 11 Cases to facilitate the fair and transparent

4  resolution of claims and interests and to otherwise preserve and maximize value for the benefit of

5  the Debtors' stakeholders.").)

6  **B.    The LeFever Settlement Agreement**

7          In December 2025, Mr. LeFever and the Plan Proponents participated in two days of

8  mediation at JAMS where they sought to resolve the claims between them.  Those efforts led to

9  Mr. LeFever and the Plan Proponents entering into the LeFever Settlement Agreement, a copy of

10 which is attached as <u>Exhibit 1</u> to the LeFever Settlement Motion.  As the LeFever Settlement

11 Agreement reflects, and as the Plan Proponents know, Mr. LeFever denies any liability to these

12 estates; he entered into the LeFever Settlement Agreement to achieve complete closure with these

13 estates, and regarding all matters as set forth in the LeFever Settlement Agreement.  The Plan

14 Proponents acknowledge that Mr. LeFever's settlement payment under the LeFever Settlement

15 Agreement ($4,725,000) "is a very substantial portion of LeFever's assets,"[4] but as explained

16 below, the Plan Proponents may be seeking to extract more from Mr. LeFever under the Lender

17 Settlement Agreements.

18         An essential and material term of the LeFever Settlement Agreement is that the Plan

19 Proponents and their related persons, entities, and successors are waiving any and all present and

20 future claims, demands, proceedings, causes of action, orders, judgments, obligations, contracts,

21 agreements, costs, expenses (including attorneys' fees), debts and liabilities whatsoever that they

22 have against Mr. LeFever, *and that have been, or in the future may be, assigned or contributed to*

23 *any of the Estate Party Releasees [including the Plan Proponents] by any creditors, claimants,*

24 *investors, contributing claimants or other parties and parties-in-interest in the Bankruptcy Case.*

25         Section 4.b of the LeFever Settlement Agreement provides:

26             "Effective upon the 91st day after the Effective Date and only so long as no
                insolvency proceeding (voluntary or involuntary) shall have been

27

28  _____
    [4] LeFever Settlement Motion [Dkt. No. 3583] at p. 4 of 43.

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

commenced by or against LeFever-Related Parties, then the Debtor-Related Parties, on behalf of themselves, their bankruptcy estates, and any other person acting through them or on their behalf, including Robbin L. Itkin, the court-appointed Responsible Individual for KSMP, and including any existing or successor Plan Recovery Trust (or similar trust or trustee) or Chapter 7 Trustee (collectively, the "Estate Releasing Parties"), hereby release and discharge to the fullest extent permitted by applicable law, the LeFever-Related Parties, and each of their beneficiaries, successors, assigns, predecessors, employees, insurers, attorneys, agents, officers and directors, and all persons acting by, through, under or in concert with the LeFever-Related Parties, or that might be claimed to be jointly or severally liable with the LeFever-Related Parties (hereinafter collectively referred to as the "LeFever Releasees," and together with the Estate Party Releasees, the "Released Parties") from any and all claims, demands, proceedings, causes of action, orders, judgments, obligations, contracts, agreements, costs, expenses (including attorneys' fees) debts and liabilities whatsoever, whether known or unknown, suspected or unsuspected, both at law and in equity, **which any of the Estate Party Releasees now have, have ever had or may hereafter have against the LeFever Releasees arising contemporaneously with or prior to the date of this Agreement, and any and all claims, demands, proceedings, causes of action, orders, judgments, obligations, contracts, agreements, costs, expenses (including attorneys' fees), debts and liabilities whatsoever, whether known or unknown, suspected or unsuspected, both at law and in equity, that have been, or on the future may be, assigned or contributed to any of the Estate Party Releasees by an [sic] creditors, claimants, investors, contributing claimants or other parties and parties-in-interest in the Bankruptcy Case, by way of the Contributing Claims process under the Plan or otherwise. This release shall not include claims to enforce the terms of this Agreement."[5]**

Notwithstanding Section 4.b of the LeFever Settlement Agreement, the Plan Proponents have entered into several settlement agreements with lenders to the debtors (the Lender Settlement Agreements) under which the Plan Proponents have negotiated and taken assignments of supposed claims against Mr. LeFever, and assignments and contributions of, *inter alia*, supposed obligations, debts, and liabilities of Mr. LeFever. (See Section II.C immediately below.) Under Section 4.b of the LeFever Settlement Agreement, Mr. LeFever expects that those assigned claims will be terminated and released immediately upon transfer from the lender(s) to the estates, and that any contributions of funds that may be recovered from Mr. LeFever by the lenders that the lenders transfer to the estates under the Lender Settlement Agreements will be immediately remitted back to Mr. LeFever under the release he is paying for under Section 4.b of the LeFever Settlement Agreement.

---

[5] LeFever Settlement Agreement at Section 4.b (p. 5) (emphasis added).

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

C.     **The Lender Settlement Agreements**

After the Plan Proponents filed the LeFever Settlement Motion on February 2, 2026 [Dkt. No. 3583], the Plan Proponents, in quick succession, filed the Lender Settlement Motions. The Lender Settlement Agreements underlying the Lender Settlement Motions directly affect Mr. LeFever, and directly affect the LeFever Settlement Agreement. Some of the Lender Settlement Agreements would materially and fatally contradict the LeFever Settlement Agreement – unless the remedies requested by Mr. LeFever under this Statement and Conditional Opposition are Ordered – and all of the Lender Settlement Agreements seek to modify the terms and claims of the estate borrowers/lenders relationships in ways to which Mr. LeFever has not consented, and to which he does not consent. A summary of the relevant Lender Settlement Motions filed so far is as follows:

| Date Filed | Docket No. | Hearing Date | Motion |
|---|---|---|---|
| 2/5/2026 | 3608 | 2/26/2026 10:00 a.m. | Joint Motion of LFM Debtors, Debtor KSMP, and the Committee to Approve Entry Into and Performance Under the **Columbia Bank** Settlement Agreement[6] |
| 2/11/2026 | 3654 | 3/4/2026 1:00 p.m. | Joint Application to Compromise Controversy with **Fannie Mae** Filed by Creditor Committee Official Committee of Unsecured Creditors[7] |
| 2/11/2026 | 3659 | 3/4/2026 1:00 p.m. | Application to Compromise Controversy with **Comerica Bank** Filed by Creditor Committee Official Committee of Unsecured Creditors[8] |
| 2/11/2026 | 3661 | 3/4/2026 1:00 p.m. | Joint Application to Compromise Controversy with California Bank of Commerce Filed by Creditor Committee Official Committee of |

---

[6] The Columbia Bank Settlement Agreement assigns, to the Debtors and their successors, 50 percent of any recoveries by Columbia Bank from Mr. LeFever on any Guarantees. *See* Columbia Bank Settlement Motion [Dkt. No. 3608] at page 10.

[7] The Fannie Mae Settlement Agreement assigns, to the Debtors and their successors, 50 percent of any recoveries by Fannie Mae from Mr. LeFever on LeFever Guarantees. *See* Fannie Mae Settlement Motion [Dkt. No. 3654] at pages 11 of 44.

[8] The Comerica Bank Settlement Agreement assigns, to the Committee and the estate, **all** supposed Comerica Bank claims and recoveries **of any nature** against Mr. LeFever, along with exclusive control thereof. *See* Comerica Bank Settlement Motion [Dkt. No. 3659] at pages 13 of 44.

| Date Filed | Docket No. | Hearing Date | Motion |
|---|---|---|---|
| | | | Unsecured Creditors |
| 2/13/2026 | 3682 | 3/6/2026 11:00 a.m. | Joint Motion of LFM Debtors, Debtor KSMP and the Committee to Approve Entry Into and Performance Under the Wilmington Trust Settlement Agreement |
| Unknown | Unknown | Unknown | [Potential] Joint Motion of LFM Debtors, Debtor KSMP and the Committee to Approve Entry Into and Performance Under KeyBank National Association Settlement Agreement[9] |

The Lender Settlement Agreements are discussed in more detail in Section III, immediately below.

### III.    STATEMENT AND CONDITIONAL OBJECTION

**A.    The Court's Order Approving the LeFever Settlement Agreement, and Any Court Orders Approving the Lender Settlement Agreements, Should Contain the Clarifying Terms Requested by Mr. LeFever Herein, or Alternatively, the Court Should Deny the Lender Settlement Motions**

As noted above, Mr. LeFever entered into the LeFever Settlement Agreement to bring closure between him and these bankruptcy estates.  The Plan Proponents know that, and they know and acknowledge that Mr. LeFever has agreed to pay "a very substantial portion" of his net worth to achieve that.  Notwithstanding their contractual release of any and all further "claims, demands, proceedings, causes of action, orders, judgments, obligations, contracts, agreements, costs, expenses (including attorneys' fees), debts and liabilities whatsoever, whether known or unknown, suspected or unsuspected, both at law and in equity, that have been, or on the future may be, assigned or contributed to any of [them] by an [sic] creditors, claimants, investors, contributing claimants or other parties and parties-in-interest in the Bankruptcy Case," the Plan Proponents now have contracted to receive those things from at least three of the subject Lenders. Without the clarifying terms of an Order that Mr. LeFever requests herein, those actions would violate the material express and implied terms of the LeFever Settlement Agreement, and the

---

[9] Not yet filed/unknown to Mr. LeFever if or when such a motion will be filed, but based on existing entries on the Court's docket, Mr. LeFever believes such a motion may be forthcoming.

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1    Court should deny approval of the applicable Lender Settlement Agreements.

2         The most extreme example of the Plan Proponents apparently seeking double recovery

3    from Mr. LeFever under the Lender Settlement Agreements, on claims against Mr. LeFever that

4    the Plan Proponent have released under the LeFever Settlement Agreement, is contained in the

5    Comerica Bank Settlement Agreement.  There, the Plan Proponents admit to extracting the

6    following things from Comerica Bank, in blatant disregard of the LeFever Settlement Agreement

7    and the Plan Proponent's duties and releases of Mr. LeFever thereunder:

8                    **Assignment of Claims against Mattson/LeFever:**

9              ● Upon the Effective Date, the Committee will have exclusive control over
      all claims and causes of action that Comerica holds against Messrs. Mattson and
10    LeFever, whether known or unknown, at law or in equity, including to in relation to
      any guaranties (Secs. 12 & 13).

11            ● Upon the occurrence of the Plan Effective Date, all such claims and
12    causes of action will be automatically assigned "as-is" to any liquidation or similar
      creditor trust under the Plan, ("Assigned Insider Claims") which trust will have sole
13    authority to pursue or otherwise dispose of such assigned claims (Secs. 12 & 13).

14            ● In the event Comerica receives any payments, distributions or proceeds
      from Messrs. Mattson or LeFever whether by settlement, judgment, enforcement or
15    otherwise, Comerica will promptly remit (in any event within 7 calendar days of
      receipt) all such Insider Proceeds to the Debtors or their successor (Sec. 11).[10]

16

17    *See* Comerica Bank Settlement Motion [Dkt. No. 3659] at pages 13 of 44.

18         These elements of the Comerica Bank Settlement Agreement not only would assign all

19    rights, claims, control, and proceeds (and so on) of any Guaranty actions against Mr. LeFever to

20    the Committee and the estates, but also would assign all rights, claims, control, and proceeds (and

21    so on) *of any other type* of actions against Mr. LeFever to the Committee and the estates.  In light

22    Section 4.b the LeFever Settlement Agreement, this purported assignment only is permissible if:

23    (1) all of these assigned claims *will be terminated and released* immediately upon Comerica's

24    transfer of them to the estates; and (2) any contributions of funds that may be recovered from

25    Mr. LeFever that Comerica transfers to the estates under the Comerica Settlement Agreement (no

26    _____

27    [10] Similar contributions of funds that may be recovered from Mr. LeFever to the estates also are
      contained (or a 50/50 sharing basis with the estate) in the Columbia Bank and Fannie Mae
28    Settlement Agreements.  See footnotes 6 and 7, above

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1    grounds or claims for recovery of any funds exist), will be immediately remitted back to

2    Mr. LeFever.  Any Orders on the LeFever Settlement Motion, the Comerica Bank Settlement

3    Motion, and other applicable and/or similar Lender Settlement Motions should so provide.

4    Otherwise, the Court should not grant the Lender Settlement Motions.  The Court should not

5    permit the estates, after releasing Mr. LeFever in full from all claims, debts, demands, obligations,

6    liabilities whatsoever (including all claims, debts, demands, obligations, liabilities later assigned to

7    the estates), to use the Lenders as their proxies and collection agents to extract more from

8    Mr. LeFever on claims the estate parties already have released under the LeFever Settlement

9    Agreement, for which Mr. LeFever is paying "a very substantial portion of LeFever's assets."

10   Such action by the Plan Proponents and other estate parties would violate the terms of the LeFever

11   Settlement Agreement, and violate the covenant of good faith and fair dealing inherent in the

12   LeFever Settlement Agreement.

13        *In addition*, as to all the Lender Settlement Agreements and Motions, the estates/Plan

14   Proponents and the Lenders have agreed to alter the relationships and liabilities between them in

15   ways to which Mr. LeFever has not consented, and does not consent.  And the Plan Proponents are

16   providing consideration to the Lenders that will have the effect of reducing or eliminating Lender

17   guaranty claims against Mr. LeFever.  Mr. LeFever reserves all rights, claims, and defenses related

18   thereto (and otherwise), and also for breach of the covenant of good faith and fair dealing by the

19   Lenders and other responsible parties in connection with any T. LeFever Guaranties.  Mr. LeFever

20   requests that any Orders on the LeFever Settlement Motion and the Lender Settlement Motions

21   should so provide that any and all rights, claims, and defenses of Mr. LeFever regarding the

22   Guarantees are reserved by Mr. LeFever.  Otherwise, the Lender Settlement Motions should be

23   denied.

24        If the Plan Proponents' intent under the Lender Settlement Agreements and the LeFever

25   Settlement Agreements is that immediately upon the assignment and/or transfer of any Lender

26   guaranty claims or other claims against Mr. LeFever to the estates, and upon the assignment

27   and/or transfer of any proceeds resulting from any Lender guaranty claims or other claims against

28   Mr. LeFever to the estates, that the Lender guaranty claims and any other claims against

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1   Mr. LeFever are immediately extinguished, and any assigned or contributed proceeds resulting

2   from any Lender guaranty claims or other claims against Mr. LeFever are immediately turned-over

3   to Mr. LeFever, the Plan Proponents should so indicate now, and all Orders related to the LeFever

4   Settlement Motion, the Lender Settlement Motions, and any Plan confirmation should so specify.

5   Otherwise, the Lender Settlement Motions should be denied for this reason, too.

6   **B.**   **Any Effort by the Plan Proponents to Collect, Directly or Indirectly, Additional
7   Claims and Sums From Mr. LeFever Would Breach the Covenant of Good Faith
    and Fair Dealing Under the LeFever Settlement Agreement**

8   "It has long been recognized in California that '[t]here is an implied covenant of good faith

9   and fair dealing in every contract that neither party will do anything which will injure the right of

10  the other to receive the benefits of the agreement.' *Kransco v American Empire Surplus Lines Ins.*

11  *Co.*, 23 Cal.4th 390, 400 (2000).  []  The covenant imposes a duty on each party to do everything

12  that the contract presupposes that they will do to accomplish its purpose. *Andrews v Mobil Aire*

13  *Estates*, 125 Cal.App.4th 578, 589 (2005)."  California Law of Contracts (Cal. CEB 2025)

14  §6.34. "A settlement agreement is a contract, and the legal principles which apply to contracts

15  generally apply to settlement contracts." *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793,

16  810 (1998).

17  For all the reasons discussed above, the Plan Proponents would be breaching the covenant

18  of good faith and fair dealing under the LeFever Settlement Agreement in a scheme to extract

19  undue sums from Mr. LeFever on claims otherwise released in the LeFever Settlement Agreement,

20  unless the Court orders that upon the assignment and/or transfer of any Lender guaranty claims or

21  other claims against Mr. LeFever to the estates, and upon the assignment and/or transfer of any

22  proceeds resulting from any Lender guaranty claims or other claims against Mr. LeFever to the

23  estates, that the Lender guaranty claims and any other claims against Mr. LeFever are immediately

24  extinguished, and any assigned or contributed proceeds resulting from any Lender guaranty claims

25  or other claims against Mr. LeFever are immediately turned-over to Mr. LeFever.

26  Of course, the Plan Proponents cannot, and should not, give the Lenders "freebies" simply

27  by waiving the assignments, contributions, and so on regarding Mr. LeFever under the Lender

28  Settlement Agreements; the Lenders already agreed to provide that consideration as part of their

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1  settlements, and the estates already have taken the position under the Lender Settlement Motions

2  that the consideration is warranted. If the estates are not willing to agree to the terms of Orders

3  that Mr. LeFever has requested herein, the Lender Settlement Motions should be denied.

4  **C.    The Court Should Approve the LeFever Settlement Agreement With the
         Additions to the Order as Requested Herein, But Should Deny Approval of the**

5       **Lender Settlement Agreements Without Those Additions Because Absent Those
         Protections, the Plan Proponents Cannot Establish That the Lender Settlement**

6       **Agreements Do Not Violate the LeFever Settlement Agreement, and That the
         Plan Proponents and Lenders Entered Into the Lender Settlement Agreements**

7       **Fair and Equitably, and in Good Faith**

8      "A court may approve a compromise or settlement only when it is 'fair and equitable.' []

9  An approval of a compromise, absent a sufficient factual foundation which establishes that it is

10 fair and equitable, inherently constitutes an abuse of discretion." *In re A & C Props.*, 784 F.2d

11 1377, 1383 (9th Cir. 1986) (citation omitted).

12     The Plan Proponents currently have not met, and cannot meet, even their initial burden on

13 the Lender Settlement Motions. It would not be possible for the Plan Proponents to obtain good

14 faith findings for themselves regarding the LeFever Settlement Agreement *and* for themselves and

15 the Lenders regarding various of the Lender Settlement Agreements, because any such findings

16 would be wholly inconsistent with each other based on the facts and arguments presented above

17 *unless* the Court enters Orders on the LeFever Settlement Motion and the Lender Settlement

18 Motions as requested herein. Accordingly, Mr. LeFever requests that the Court include such

19 protections on the Orders, or else deny the Lender Settlement Motions.

20 **IV.    CONCLUSION**

21     Based upon the foregoing, Mr. LeFever respectfully requests, consistent with the terms of

22 the LeFever Settlement Agreement, that the Court orders in the Orders on the LeFever Settlement

23 Motion and the Lender Settlement Motions that: (A) all claims and rights to pursue claims against

24 Mr. LeFever assigned, contributed, and/or transferred to the estates/Plan Proponents and their

25 successors under the Lender Settlement Agreements immediately will terminate upon assignment,

26 contribution, and/or transfer thereof to the estates/Plan Proponents, and all such claims will not be

27 pursued against Mr. LeFever or otherwise; (B) the estates and their successor(s) shall, immediately

28 upon receipt, remit to Mr. LeFever any and all proceeds received from any Lender from any

Lender's pursuit of claims against Mr. LeFever granted to the estates or their successors under the Lender Settlement Agreements (or otherwise); and (C) the Court enters Orders on the LeFever Settlement Motion and the Lender Settlement Motions providing that Mr. LeFever shall, notwithstanding any approval of the Lender Settlement Agreements by this Court, retain all rights, defenses, set-offs, and claims against the estates, the Lenders, and any other applicable person or entity, with regard to the T. LeFever Guarantees, and any enforcement thereof. Otherwise, Mr. LeFever requests that the Court deny approval of the Lender Settlement Motions.

DATED: February 19, 2026      COBLENTZ PATCH DUFFY & BASS LLP

By: _____
            */s/ Gregg M. Ficks*
            Gregg M. Ficks
            Attorneys for Timothy J. LeFever

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663