| | |
|---|---|
| Tobias S. Keller (CA Bar No. 151445) | Debra I. Grassgreen (CA Bar No. 169978) |
| David A. Taylor (CA Bar No. 247433) | John D. Fiero (CA Bar No. 136557) |
| Thomas B. Rupp (CA Bar No. 278041) | Jason H. Rosell (CA Bar No. 269126) |
| KELLER BENVENUTTI KIM LLP | PACHULSKI STANG ZIEHL & JONES LLP |
| 101 Montgomery Street, Suite 1950 | One Sansome Street, Suite 3430 |
| San Francisco, CA 94104 | San Francisco, CA 94104 |
| Telephone: (415) 496-6723 | Telephone: (415) 263-7000 |
| E-mail: tkeller@kbkllp.com | E-mail: dgrassgreen@pszjlaw.com |
| dtaylor@kbkllp.com | jfiero@pszjlaw.com |
| trupp@kbkllp.com | jrosell@pszjlaw.com |

*Counsel to LeFever Mattson and Its Affiliated Debtors and Debtors in Possession*

*Counsel to the Official Committee of Unsecured Creditors*

Richard L. Wynne (CA Bar No. 120349)
Erin N. Brady (CA Bar No. 215038)
Edward J. McNeilly (CA Bar No. 314588)
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Email: richard.wynne@hoganlovells.com
erin.brady@hoganlovells.com
edward.mcneilly@hoganlovells.com

*Counsel to KS Mattson Partners, LP*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>LEFEVER MATTSON,<br>a California corporation, *et al.*,[1]<br><br>Debtors. | Case No. 24-10545 (CN)<br><br>(Jointly Administered)<br><br>Chapter 11<br><br>**OMNIBUS REPLY OF DEBTORS AND THE COMMITTEE TO TIMOTHY J. LEFEVER'S:**<br><br>**(1) STATEMENT AND CONDITIONAL OBJECTION TO JOINT MOTION OF LFM DEBTORS,** |

---

[1] The last four digits of LeFever Mattson's tax identification number are 7537. The last four digits of the tax identification number for KS Mattson Partners, LP ("KSMP") are 5060. KSMP's address for service is c/o Stapleton Group, 514 Via de la Valle, Solana Beach, CA 92075. The address for service on LeFever Mattson and all other Debtors is 6359 Auburn Blvd., Suite B, Citrus Heights, CA 95621. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://veritaglobal.net/LM.

| | |
|---|---|
| In re:<br><br>KS MATTSON PARTNERS, LP,<br><br>　　　　　　　　　Debtor. | DEBTOR KSMP, AND THE COMMITTEE TO APPROVE ENTRY INTO AND PERFORMANCE UNDER THE SETTLEMENT AGREEMENT WITH TIMOTHY J. LEFEVER AND CERTAIN OF HIS AFFILIATES [DOCKET NO. 3705]; AND<br><br>(2) OMNIBUS STATEMENT AND CONDITIONAL OBJECTION TO JOINT MOTIONS TO APPROVE ENTRY INTO AND PERFORMANCE UNDER MULTIPLE LENDER SETTLEMENT AGREEMENTS [DOCKET NO. 3706]<br><br>**Date:** February 26, 2026<br>**Time:** 10:00 a.m.<br>**Place:** *Via Zoom or In Person*<br>　　　　United States Bankruptcy Court<br>　　　　1300 Clay Street, Courtroom 215<br>　　　　Oakland, CA 94612 |

LeFever Mattson, a California corporation ("LeFever Mattson"), and certain of its affiliates together with KS Mattson Partners, LP and its debtor affiliates (collectively, the "Debtors"), as debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases") and the Official Committee of Unsecured Creditors (the "Committee" and, together with the Debtors, the "Movants" or "Estate Parties") hereby file this reply ("Reply") to Timothy J. LeFever's ("LeFever") (1) *Statement and Conditional Objection to Joint Motion of LFM Debtors, Debtors KSMP, and the Committee to Approve Entry Into and Performance Under the Settlement Agreement with Timothy J. LeFever and Certain of his Affiliates* [Docket No. 3705]; and (2) *Omnibus Statement and Conditional Objection to Joint Motions of LFM Debtors, Debtor KSMP, and the Committee to Approve Entry Into and Performance Under Multiple Lender Settlement Agreements* [Docket No. 3706] (together, the "Objections").

//

//

//

## PRELIMINARY STATEMENT

The Objections assert perceived flaws in certain Lender Settlement Agreements[2] that the Plan Proponents have set for hearing on three upcoming hearing dates and also attacks LeFever's own settlement. This Reply addresses LeFever's contentions in an omnibus fashion.

LeFever's first argument is that each signed and documented lender settlement requires additional "clarifying terms." Next, he argues that the Movants cannot benefit from a lender's assignment of any claim interest that might exist because he is liable to the lender under one of the many guaranties he has executed. Finally, LeFever contends that any order approving the LeFever Settlement Agreement *or* the Lender Settlement Agreements must include "additions" he believes are important.

In each case, LeFever's objection is based upon his mistaken belief that the estates are receiving assigned or contributed claims that are being released under the LeFever Settlement Agreement. With the exception of the Comerica Settlement, the estates are not receiving an assignment of any claims – **they are merely receiving a delayed payment from the Lenders contingent upon a recovery by the Lenders of a claim against LeFever.** The release in the LeFever Settlement Agreement only covers claims that are held by the Estate Parties now or are later assigned to the Estate Parties. It does not and cannot cover third party claims against him. Those claims survive and they are not impacted by any financial agreement to pay additional funds to the estates in the event the lender recovers additional funds.

## ADDITIONAL FACTS

LeFever demands the addition of new language to (a) the order approving his settlement, (b) each order approving a Lender Settlement Agreement, and (c) the plan confirmation order dictating how any LeFever guaranty obligations would be handled. Specifically, he asks this Court to modify each order so that it states that:

> (A) all claims and rights to pursue claims against Mr. LeFever assigned, contributed, and/or transferred to the estates/Plan Proponents and their successors under the Lender Settlement Agreements immediately will terminate upon assignment, contribution, and/or transfer thereof to the

---

[2] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Objections, as applicable.

estates/Plan Proponents, and all such claims will not be pursued against Mr. LeFever or otherwise;

(B) the estates and their successor(s) shall, immediately upon receipt, remit to Mr. LeFever any and all proceeds received from any Lender from any Lender's pursuit of claims against Mr. LeFever granted to the estates or their successors under the Lender Settlement Agreements (or otherwise); and

(C) the Court enter Orders on the LeFever Settlement Motion and Lender Settlement Motions providing that Mr. LeFever shall, notwithstanding any approval of the Lender Settlement Agreements by this Court, retain all rights, defenses, set-offs, and claims against the estates, the Lenders, and any other applicable person or entity, with regard to the T. LeFever Guarantees, and any enforcement thereof.[3]

This would create an unnecessary sideshow that LeFever could have bargained for in mediation or during the drafting of the LeFever Settlement Agreement, but did not. Instead, he has chosen this time and place to object to both his own settlement agreement's approval and each of the Lender Settlements.

## ANALYSIS AND ARGUMENT

What LeFever's argument ignores is even more important than what it contains. In this regard, LeFever has ignored the fact that of the six Lender Settlement Agreements he identifies in the Reply, only three of them contain *any* language relating to the disposition of lender rights against him (Columbia Bank, Fannie Mae, and Comerica). Indeed, as the attached **Exhibit A** excerpting the relevant Lender Settlement Agreements makes clear, two of them (Columbia Bank and Fannie Mae) do not give the Plan Proponents any rights against LeFever whatsoever. Rather, they include a requirement that 50% of any additional funds collected by the lender be paid over to the Estate Parties or their successor. Such a provision is not barred by anything in the LeFever Settlement Agreement. As the Objections themselves quote, LeFever's release extends only to claims the Estate Parties have (now or in the future) against LeFever. The sharing provision contained in the Columbia Bank and Fannie Mae Lender Settlement Agreements gives the Estate Parties a claim against the

---

[3] *Omnibus Statement and Conditional Objection to Joint Motions of LFM Debtors, Debtor KSMP, and the Committee to Approve Entry Into and Performance Under Multiple Lender Settlement Agreements* [Docket No. 3706], 13:23-14:6.

applicable lender. No claim against LeFever is given to or held by them. As if this simple legal construct were not convincing enough, LeFever also apparently fails to appreciate that these provisions (putting all collection responsibility on the lender) work as a disincentive because, after bearing all the risk of collection, they would then be forced to give away half of any net collected proceeds.

With regard to the third relevant agreement (with Comerica Bank), the Estate Parties are also perplexed because by virtue of Comerica Bank assigning its claims to the estates, in the event the LeFever Settlement is approved, *those guaranty claims will be released.* Thus, the relevant provision of the Comerica agreement is beneficial to LeFever. Nonetheless, if LeFever is opposed to that assignment in the Comerica Settlement Agreement, the estate parties will remove it from the Comerica Settlement Agreement and Comerica can retain and pursue its claims against Mr. LeFever.

What the Plan Proponents cannot agree to is LeFever's "me first" demand that the order approving the LeFever Settlement Agreements contain modifications not bargained for in the fully executed settlement agreement or otherwise. The fully-executed Lender Settlement Agreements represent the culmination of difficult and contentious negotiations involving novel theories of liability with capable and experienced counsel on each side. There is no basis for making any changes to those agreements or the orders approving them.

## CONCLUSION

LeFever could have fixed the one legitimate concern expressed in the Reply with a phone call regarding the Comerica settlement. Because none of his other arguments make any sense on these facts and the Estate Parties will agree to the excision of paragraph 12 from the Comerica Lender Settlement Agreement (if LeFever insists), the Court should reject the balance of LeFever's efforts to block the progress of this complicated bankruptcy case, approve the Lender Settlement Agreements, and not impose any additional LeFever-related burdens on the future confirmation order or additional lender settlements.

Dated: February 24, 2026     **KELLER BENVENUTTI KIM LLP**

By: */s/ Thomas B. Rupp*
      Thomas B. Rupp

*Counsel to the LFM Debtors*

Dated: February 24, 2026     **HOGAN LOVELLS US LLP**

By: */s/ Erin N. Brady*
      Erin N. Brady

*Counsel to KSMP*

Dated: February 24, 2026     **PACHULSKI STANG ZIEHL & JONES LLP**

By: */s/ John D. Fiero*
      John D. Fiero

*Counsel to the Committee*

# APPENDIX A

## Excerpts of Relevant Lender Settlement Agreements[4]

**COLUMBIA BANK SETTLEMENT AGREEMENT**

20. **Claims Against Guarantors**. *In the event Columbia receives any payments, distributions, or proceeds (the "Guarantor Proceeds") from any non-Debtors guarantor of the Secured Loans, including Kenneth W. Mattson and Timothy J. LeFever, whether by settlement, judgment, enforcement, or otherwise (the "Guaranty Enforcement Actions"),* ***Columbia shall promptly, and in any event within seven (7) calendar days of receipt, turnover and remit 50% of the Net Recovery (as defined below) of such Guarantor Proceeds to the Debtors or their successors-in-interest****.* Any action taken by Columbia in connection with the Guaranty Enforcement Actions shall be in the discretion of Columbia, without the necessity of consultation with or the approval by the Estate Parties and/or any successor thereto, including the Plan Recovery Trustee (as defined in any Conforming Plan). The term "Net Recovery" shall mean all amounts paid to Columbia as a result of the Guaranty Enforcement Actions, reduced by all actual attorneys' fees and costs incurred by Columbia in connection with the prosecution and/or settlement of the Guaranty Enforcement Actions. Any distributions on account of any proof of claim filed by Columbia in any insolvency proceeding commenced by or against a non-Debtors guarantor of the Secured Loans shall constitute Guarantor Proceeds.

**FANNIE MAE SETTLEMENT AGREEMENT**

11. **Claims Against Timothy J. LeFever**. *In the event Fannie receives any payments, distributions, or proceeds (the "LeFever Proceeds") directly or indirectly from Timothy J. LeFever, in connection with the settlement, judgment, or enforcement of his guaranty of the Secured Loan (the "LeFever Enforcement Actions"),* ***Fannie Mae shall promptly, and in any event within seven (7) calendar days of receipt, turnover and remit 50% of the Net Recovery (as defined below) of such LeFever Proceeds to the Debtors or their successors-in-interest.*** Any action taken by Fannie Mae (including no action) in connection with the LeFever Enforcement Actions shall be in the discretion of Fannie Mae, without the necessity of consultation with or the approval by the Estate Parties and/or any successor thereto, including the Plan Recovery Trustee (as defined in the Plan). The term "Net Recovery" shall mean all amounts paid to Fannie Mae as a result of the LeFever Enforcement Actions, reduced by all actual attorneys' fees and costs incurred by Fannie Mae in connection with the prosecution and/or settlement of the LeFever Enforcement Actions. Any distributions on account of any proof of claim filed by Fannie Mae in any insolvency proceeding commenced by or against Timothy J. LeFever shall constitute LeFever Proceeds.

**COMERICA SETTLEMENT AGREEMENT**

12. **Control and Assignment of Claims Against Timothy J. LeFever**. Upon the Effective Date, the Committee shall have exclusive control over all claims and causes of action that Comerica holds, if any, against Timothy J. LeFever, whether known or unknown, suspected or unsuspected, both at law and in equity, arising prior to or as of the Effective Date, including, but not

---

[4] Not included here are excerpts from the California Bank of Commerce, KeyBank, and Wilmington Trust Lender Settlement Agreements because none of those agreements contain claim assignment language. Thus, they are irrelevant.

| | |
|---|---|
| 1 | limited to, any claims and causes of action arising under any guaranty signed by Timothy J. LeFever in connection with a Secured Loan. Furthermore, upon the occurrence of the Plan Effective Date, all such claims and causes of action of Comerica against Timothy J. LeFever shall be automatically assigned, transferred, and conveyed, without recourse, representation or warranty of any kind, on an "as-is, where-is" basis, with all faults, to any litigation, liquidation, or similar creditor trust established pursuant to a Conforming Plan, and such creditor trust shall have sole authority to pursue, settle, or otherwise dispose of such claims and causes of action. In the event Comerica receives any payments, distributions, or proceeds (the "LeFever Proceeds") from Timothy J. LeFever or from or in connection with any insolvency proceeding commenced by or against Timothy J. LeFever, whether by settlement, judgment, enforcement, or otherwise, Comerica shall promptly, and in any event within seven (7) calendar days of receipt, turnover and remit 100% of all such LeFever Proceeds to the Debtors or their successor. |