Debra I. Grassgreen (CA Bar No. 169978)
John D. Fiero (CA Bar No. 136557)
Jason H. Rosell (CA Bar No. 269126)
Brooke E. Wilson (CA Bar No. 354614)
PACHULSKI STANG ZIEHL & JONES LLP
One Sansome Street, Suite 3430
San Francisco, California 94104-4436
Telephone: 415-263-7000
Email: LMCommittee@pszjlaw.com

*Counsel to the LFM Plan Recovery Trust*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SANTA ROSA DIVISION**

| | |
|---|---|
| In re<br><br>LEFEVER MATTSON,<br><br>Consolidated Debtor. | Case No. 24-10545 (HLB)<br>(Substantively Consolidated)<br>Chapter 11<br><br>**PLAN RECOVERY TRUSTEE'S FIRST STATUS REPORT TO INVESTORS (MAY 14, 2026 THROUGH SEPTEMBER 30, 2026)**<br><br>**This report is for informational purposes only. No relief is requested from the Court and no action is required.** |

Michael Goldberg, solely in his capacity as Plan Recovery Trustee (the "Trustee") of the LFM Plan Recovery Trust (the "Trust") formed pursuant to the *Third Amended Chapter 11 Plan of Liquidation, As Modified* [Docket No. 4151] (the "Plan") in the above-captioned bankruptcy case (the "Chapter 11 Case") of consolidated debtor LeFever Mattson, a California corporation (the "Consolidated Debtor"),[1] submits this first status report (the "Report") to the investors who hold

[1] On March 6, 2026, the Court entered the *Order Substantively Consolidating Consolidated Debtor and KSMP Investment Entities and Granting Related Relief* [Docket No. 3914] (the "Substantive Consolidation Order"), which substantively consolidated the estates of LeFever Mattson, a California corporation and its affiliated debtors (the "LFM Debtors"), KS Mattson Partners, LP ("KSMP" and, together with the LFM Debtors, the "Debtors") and three-KSMP affiliated entities (Perris Freeway Plaza, LP, Specialty Properties Partners, LP and Treehouse Investments, LP) (the "KSMP Investment Entities").

claims against the Consolidated Debtor (collectively, "Investors"). The Report covers the period from May 14, 2026, the effective date of the Plan (the "Effective Date"), through September 30, 2026 (the "Reporting Period"), and notes certain developments after the Reporting Period where indicated.[2]

The purpose of this Report is to give Investors an update on the administration of the Trust. It is not a complete description of every matter on which the Trustee and his professionals have worked and it does not request any relief from the Court. The Trustee intends to file this type of report each quarter.

## I. BACKGROUND

1. Beginning on August 6, 2024,[3] the LFM Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On November 22, 2024, KSMP became subject to an involuntary chapter 11 petition. The Official Committee of Unsecured Creditors (the "Committee") was appointed on October 9, 2024, and, together with the Debtors, conducted a joint investigation that produced the *Joint Investigation Report* [Docket No. 2568].

2. On March 6, 2026, the Court entered the Substantive Consolidation Order, which consolidated the estates of the LFM Debtors, KSMP, and the KSMP Investment Entities into the single Consolidated Debtor, effective as of September 12, 2024. On April 23, 2026, the Court entered its order [Docket No. 4225] (the "Confirmation Order") confirming the Plan. In the Confirmation Order, the Court found that the Debtors and the KSMP Investment Entities were operated as a Ponzi scheme from at least September 12, 2017. The Plan became effective on May 14, 2026 [Docket No. 4335].

3. On the Effective Date, the Trust was formed under the *Plan Recovery Trust Agreement* dated May 14, 2026 (the "Trust Agreement"), and the Trustee was appointed. All prepetition limited partnership interests, limited liability company interests, and investor deeds of

[2] A capitalized term used but not defined in this Report shall have the meaning ascribed to it in the Plan.

[3] LFM Debtor, Windscape Apartments, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 6, 2024. LFM Debtors Pinewood Condominiums, LP and Ponderosa Pines, LP each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 2, 2024. The other fifty-eight LFM Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 12, 2024.

trust were cancelled and replaced with a single Investor Claim for each Investor, which entitles the holder to Class A and Class B Plan Recovery Trust Units. Investors who voted to accept the Plan and did not opt out of the Contributed Claim Election also contributed their individual claims against third parties (the "Contributed Claims") to the Trust in exchange for Class C Plan Recovery Trust Units. The Committee dissolved on the Effective Date. The Trust has a three-member Oversight Committee, consisting of the Manfred K. Fischer Trust, the Mullin Family Trust, and the Umbriac & Tubley Family Trust, which serves in a consultative role to the Trustee.

4. The Trustee is the sole officer and director of the Consolidated Debtor, which continues to hold the remaining real property pending sale. On June 16, 2026, the Court entered a final decree [Docket No. 4392] closing the separate chapter 11 cases of the sixty-one consolidated entities. The Chapter 11 Case of the Consolidated Debtor remains open.

5. The Trustee has retained various professionals to assist him in the administration of the Trust and real estate portfolio, including Pachulski Stang Ziehl & Jones LLP as bankruptcy counsel, Miller Barondess, LLP as special litigation counsel, and Atalyst Financial Group, Inc. as real estate advisor and property manager. Since the Effective Date, aggregate monthly professional fees have declined substantially from the pre-Effective Date period and the Trustee expects professional fees to further decline as the Consolidated Debtor completes the monetization of its real estate portfolio, the claims reconciliation process concludes, and the Trust focuses its efforts on contingency fee-based litigation matters.

6. On September 16, 2026, the Trustee filed his post-confirmation report for the quarter ended June 30, 2026 [Docket No. 4571]. As of June 30, 2026, the Trust and the Consolidated Debtor held approximately $48.5 million in cash. The report for the quarter ended September 30, 2026 will be filed separately.

## II. INVESTOR COMMUNICATIONS

7. The Trust communicates with Investors through the website maintained by Verita Global, the Court-approved claims and noticing agent, at https://veritaglobal.net/LM, where all pleadings filed in the Chapter 11 Case are available at no cost. Letters to Investors, frequently asked questions, and recordings of town hall meetings are posted on the "Committee Communications"

page at https://www.veritaglobal.net/lm/info/14065. Investors may also send questions to LMCommittee@pszjlaw.com or call Verita toll-free at (877) 709-4751.

8. During the Reporting Period, the following were posted to the Committee Communications page:

a. **May 21, 2026** – Video recording of the Ninth Town Hall, recorded on May 20, 2026, providing an update on the status of the case following the Effective Date and the next steps in the process.

b. **July 22, 2026** – Letter to IRA custodians explaining that prepetition investments were cancelled under the Plan and replaced with a single Investor Claim, so that custodians can adjust account records and any value-based fees accordingly.

c. **August 21, 2026** – Video recording of the Tenth Town Hall, recorded on August 20, 2026, providing a further update on the administration of the Trust.

d. **September 25, 2026** – Letter from the Trustee explaining which Investors will receive a Schedule K-1 for the 2025 tax year (discussed in Section III below).

e. **September 2026** – Updated frequently asked questions addressing the timing and method of distributions, tax reporting, and how to update contact information.

9. Going forward, the Trustee expects to file a quarterly report with the Court as its primary method of communication with Investors. This approach balances the Investors' need for information against the professional fees required in connection with town halls and responding to inquiries. If a time-sensitive development occurs, the Trustee will communicate it sooner.

10. Investors who have moved or need to change their contact information must submit the change through Verita's online inquiry form at veritaglobal.net/lm/inquiry by typing "I want to change my address on the mailing matrix" in the inquiry box. Investors are responsible for keeping their addresses current. Distribution checks will be mailed to the address on file.

## III. TAX MATTERS

11. **Schedule K-1s for 2025.** The Trust engaged FTI Consulting, Inc. to prepare tax reports for the Debtors. In mid-September 2026, FTI sent a Schedule K-1 for the 2025 tax year to

each Investor whose investment was reflected in the applicable Debtor's books and records (an "on-book" investment), as identified on the *Omnibus List of Equity Security Holders* [Docket No. 353]. The Trust is not issuing a Schedule K-1 or any other tax reporting form for the 2025 tax year on account of "off-book" investments or investments in non-Debtor entities. An Investor who holds an on-book investment and has not received a Schedule K-1 should contact LMCommittee@pszjlaw.com. The Trustee's September 25, 2026 letter, which Investors may share with their accountants, is posted on the Committee Communications page.

12. **Discussions with the Internal Revenue Service.** On August 11, 2026, the Trustee's tax advisors submitted a tax position paper to the Internal Revenue Service to begin discussions regarding the federal income tax treatment of the Debtors. Consistent with the Court's findings in the Substantive Consolidation Order and the Confirmation Order, the paper proposes that the Debtors other than LeFever Mattson be disregarded for federal income tax purposes, that the Consolidated Debtor be treated as the owner of all of the Debtors' assets, that Investors be treated as creditors of the Consolidated Debtor rather than as partners in the individual Debtors, that the Trust be treated as a liquidating trust, and that Investors be eligible to claim theft loss deductions for Ponzi scheme losses under Revenue Ruling 2009-9 and Revenue Procedure 2009-20. These discussions are at an early stage, and no agreement has been reached. The Trustee will update Investors as the discussions progress. **This Report is not tax advice. Investors should consult their own tax advisors regarding their individual circumstances**.

13. **Priority Tax Claims.** Certain taxing authorities have asserted priority claims against the Consolidated Debtor, including the Internal Revenue Service. Under the Bankruptcy Code and the Plan, **allowed priority claims must be paid before distributions are made to Investors**. Resolving these claims is one of the conditions to the initial distribution discussed in Section VIII below and is the focus of the Trust and its professionals.

## IV. CLAIMS RECONCILIATION

14. More than 1,900 proofs of claim and 800 proofs of interest have been filed in the Chapter 11 Case. Many Investors filed multiple claims or interests for the same investment. Under the Plan, each Investor's claims are "netted" into a single Investor Claim consisting of (a) a Tranche

1 Claim equal to the amount invested, less returns of principal and less distributions received during the seven years before September 12, 2024, and (b) a Tranche 2 Claim equal to the distributions deducted in calculating the Tranche 1 Claim.

15. **Consensually Resolved Investor Claims (Class 5 Claims).** With the solicitation package, the Committee sent each Investor an Investor Claim Settlement Offer Letter setting out its calculation of the Investor's Tranche 1 and Tranche 2 Claims, together with a schedule showing each investment, the cash invested, and the distributions received. Investors who agreed signed and returned the letter. Investors with questions were able to review the calculation with the Committee's financial advisor. More than 575 Investors signed and returned their letters. On May 21, 2026, the Court entered an order [Docket No. 4358] approving procedures for allowing Investor Claims on an omnibus basis and for resolving Investor Claims that are not consensually resolved.

16. On July 28, 2026, the Trustee filed his first through eighth omnibus motions to allow consensually resolved Investor Claims [Docket Nos. 4475–4489], and a ninth omnibus motion followed [Docket No. 4539]. The Court granted all nine motions by orders entered on August 27, September 2, and September 28, 2026. Each order allows one Investor Claim per Investor in the Tranche 1 and Tranche 2 amounts stated in the signed letter, disallows the duplicate proofs of claim and interest, and authorizes Verita to update the claims register. Through these motions, more than 2,000 proofs of claim and proofs of interest asserted by Investors and scheduled interests have been resolved, and approximately 150 remain unresolved.

17. **Non-Investor Claims (Class 4 Claims).** The Court has also entered orders on the Trustee's first three omnibus objections to non-Investor claims [Docket Nos. 4510, 4511, 4519], disallowing and expunging duplicate, amended, and unsupported claims. Through those omnibus objections, approximately 250 non-Investor claims have been modified, disallowed, or expunged, reducing the amounts asserted by approximately $65 million, and approximately 1,000 non-Investor claims remain outstanding. Several individual claims were resolved by stipulation during the Reporting Period, and the Trustee is litigating one contested objection to a large non-Investor claim, in which discovery is ongoing. Under the Plan, the deadline to object to claims is November 10, 2026. On October 15, 2026, after the Reporting Period, the Trustee filed a motion [Docket No.

4594] asking the Court to extend that deadline by 180 days, through and including May 10, 2027, without prejudice to the Trustee's right to seek further extensions, so that he can complete the reconciliation process. On October 16, 2026, the Court entered an interim order [Docket No. 4600] extending the deadline through and including November 12, 2026.

## V. INVESTIGATION AND RULE 2004 EXAMINATIONS

18. The Trust succeeded to the investigation begun by the Committee, and the Confirmation Order gives the Trustee independent authority to conduct examinations under Rule 2004 of the Federal Rules of Bankruptcy Procedure. During the Reporting Period, the Trustee used that authority in three principal respects.

19. **Bank Records.** On July 16, 2026, the Court entered orders [Docket Nos. 4457 and 4458] authorizing subpoenas to BMO Bank N.A. (the successor to Bank of the West, where Mr. Mattson maintained the account ending in 1059 through which much of the Ponzi scheme was conducted) and to First Bank.

20. **Source of Bail Funding for Mr. Mattson.** Mr. Mattson is a chapter 7 debtor in a separate bankruptcy case (Case No. 24-10714). On August 25, 2026, the Trustee applied in that case for authority to examine two of Mr. Mattson's relatives who, according to the docket in Mr. Mattson's criminal case, posted cash bail and a deed of trust on his behalf in June 2025. The purpose of the examination is to determine whether assets of Mr. Mattson's bankruptcy estate were used to fund the bail and, if so, to recover them. The Court granted the application by order entered on September 8, 2026 [Case No. 24-10714, Docket No. 273].

21. **Other Third Parties.** The Trustee and his professionals continue to review the records assembled during the joint investigation to identify additional claims. A request for information from a third party does not mean that the Trustee will ultimately assert a claim against that party. Rather, it means only that the party may have information that should be reviewed. The Trustee expects to seek further Rule 2004 relief as the investigation proceeds and will report on significant developments in future reports.

## VI. LITIGATION

22. **Action Against the Debtors' Former Counsel.** The Trustee engaged Miller Barondess, LLP, led by Louis R. "Skip" Miller, as special litigation counsel to pursue claims against certain professionals who provided services to the LFM enterprise. On August 5, 2026, the Trustee filed a complaint in the Superior Court of California, County of Sonoma, against Scott C. Smith, Hanson Bridgett LLP, and Morgan, Lewis & Bockius LLP, as successor to Bingham McCutchen LLP. The complaint alleges that Mr. Smith, who served as the LFM enterprise's principal outside counsel for more than twenty years, and the firms at which he practiced, prepared the entity and offering documents through which the Ponzi scheme operated, knew that the enterprise was selling unregistered securities and received specific notice of fraud as early as 2013, and continued to provide legal services without remediation, disclosure, or withdrawal. The complaint asserts claims for aiding and abetting securities fraud, fraud, breach of fiduciary duty, and conversion, as well as professional negligence and breach of fiduciary duty, and seeks damages in excess of $200 million, disgorgement, and punitive damages. The Trustee brings the action both as successor to the Debtors and on behalf of the Investors who contributed their Contributed Claims to the Trust. The defendants are expected to contest the claims vigorously, and litigation of this kind typically takes years to resolve. The Trustee cannot predict the outcome or timing of any recovery.

23. **Avoidance Actions.** On or about September 10, 2026, the Trustee commenced three adversary proceedings in this Court to recover transfers made by the Consolidated Debtor during the Ponzi scheme. Two of the actions are against national banks: JPMorgan Chase Bank, N.A., which received approximately $2 million from the 1059 Account between 2017 and 2023, and Citibank, N.A., which received in excess of $3 million in similar payments between 2017 and 2024. The complaints seek to avoid and recover these payments as fraudulent transfers and, in the case of Chase, to disallow its proof of claim until the transfers are repaid. The other action is against an Investor who received distributions exceeding the principal they invested (a so-called "net winner"), in the aggregate amount of approximately $650,000, together with payments received during the ninety days before the petition date. Under Ninth Circuit law, payments to investors in

a Ponzi scheme in excess of their principal are recoverable as fraudulent transfers even if the investor was innocent of any wrongdoing. The Trustee continues to analyze the Debtors' records and, as a result, may file additional avoidance actions.

24. During the Reporting Period, the Trustee also entered into four (4) settlement agreements to resolve claims against certain "net winners," resulting in more than $800,000 in settlement payments to the Trust and the waiver of claims against the Consolidated Debtor and Trust held by the settling "net winners."

25. **Settlement with Mr. Mattson's Criminal Defense Counsel.** On May 15, 2026, the Trustee entered into a settlement agreement with Randy Sue Pollock, an attorney who received a wire transfer from KSMP in May 2024 to fund a retainer for her representation of Mr. Mattson in the civil and criminal proceedings against him. On October 21, 2025, KSMP had commenced an adversary proceeding against Ms. Pollock (Adv. Pro. No. 25-01019) seeking to avoid and recover the retainer payment as an actual and constructive fraudulent transfer, and the Trustee was substituted as plaintiff on the Effective Date. Under the settlement, Ms. Pollock agreed to pay the Trust a settlement amount in three installments: the first payment has already been made, the second installment is due in mid-November, and the final installment is due on or before May 15, 2027. Ms. Pollock also waived any claim against the Consolidated Debtor's estate and the Trust, including any claim under section 502(h) of the Bankruptcy Code, and the parties exchanged mutual releases that do not extend to any claims against Kenneth Mattson, Stacy Mattson, or KS Mattson Company LLC. Once the settlement amount is paid in full, the Trustee will dismiss the adversary proceeding with prejudice.

26. **Appeal Regarding Live Oak Investments, LP.** On June 29, 2026, the Bankruptcy Appellate Panel of the Ninth Circuit issued a published opinion affirming the bankruptcy court's ruling that the Live Oak limited partners' attempt to remove LeFever Mattson as general partner of Live Oak Investments, LP after the applicable petition date violated the automatic stay and was void.[4] The decision confirms that the Consolidated Debtor's management rights in the limited

---

[4] *Andrew v. Official Committee of Unsecured Creditors (In re LeFever Mattson)*, BAP No. NC-25-1238-BCN (B.A.P. 9th Cir. June 29, 2026). The Panel held that California Corporations Code sections 15906.03 and

partnerships were property of the estate and were properly administered under the Plan. The Trust is investigating potential causes of action against the Live Oak limited partners and their counsel in connection with their violation of the automatic stay and the costs such parties required the estate to incur.

27. **Co-owned Properties.** On May 22, 2026, the Consolidated Debtor commenced an adversary proceeding under section 363(h) of the Bankruptcy Code to sell a property on Highway 12 in Sonoma that it co-owns with two other tenants in common, one of whom had not consented to the sale [Docket No. 4362]. The dispute was resolved by a stipulation approved on June 23, 2026 [Docket No. 4404], under which the co-owner consented to the sale of that property and a second co-owned property on Highway 12, with the net sale proceeds to be held in escrow pending agreement or a further order on their allocation.

28. **Tenant Litigation.** The Trustee is defending an adversary proceeding brought by a former tenant of a property in Sacramento who was evicted by the state court in April 2026, and has moved to dismiss it. After the Reporting Period, on October 6, 2026, the Trustee moved to enforce the Plan's exculpation and injunction provisions against a related state court action filed by the former tenant's co-occupants, and to require withdrawal of a *lis pendens* recorded against the property [Docket No. 4587]. A hearing on the motion to dismiss is set for November 12, 2026.

29. **Kenneth Mattson's Chapter 7 Case.** Mr. Mattson's own bankruptcy case was converted to chapter 7 on September 22, 2025, and Janina M. Hoskins serves as the chapter 7 trustee. On June 22, 2026, the Trustee filed a proof of claim in that case for not less than $237 million on behalf of the Debtors and the holders of Contributed Claims, based on Mr. Mattson's breaches of fiduciary duty, fraud, and fraudulent transfers. On July 1, 2026, the court in that case approved a stipulation between the Trustee and the chapter 7 trustee under which all claims and interests filed by Mr. Mattson and his wife in the Chapter 11 Case are subordinated to the claims of Investors, so that the Mattsons can recover nothing unless Investors are paid in full, and the Trust is not required to reserve for their claims. The deadline for the Trust and other parties to object to

---

15906.05, which would dissociate a general partner upon its bankruptcy filing, are preempted by section 541(c)(1)(B) of the Bankruptcy Code.

Mr. Mattson's discharge has been extended to January 1, 2027, and the Trustee is in the process of preparing a non-dischargeability complaint.

## VII. REAL ESTATE

30. Under the Plan, the real property that had not been sold as of the Effective Date remained vested in the Consolidated Debtor, to be marketed and sold under the supervision of the Trustee. Between the Effective Date and September 30, 2026, nineteen (19) properties were sold for aggregate gross proceeds of approximately $43 million, generating approximately $9.5 million in net proceeds after payment of secured debt, closing costs, and commissions. After the Reporting Period, two additional properties were sold, on October 13, 2026 and October 30, 2026, bringing the total to twenty-one (21) properties sold for aggregate gross proceeds of approximately $63 million and approximately $11.1 million in net proceeds. As of the date of this Report, approximately seventeen (17) properties remain to be sold. Attached hereto as **Appendix 1** is a summary report of property sales since the Effective Date.

## VIII. TIMING OF DISTRIBUTIONS

31. No distribution has yet been made to Investors, and the Trustee has not set a date for the initial distribution. Under the Trust Agreement, the Trustee must establish reserves for the Trust's expenses and for disputed claims before making a distribution, and must make distributions at least annually unless the Oversight Committee agrees otherwise. Before the initial distribution can be made, the Trustee must (a) complete the allowance of Investor Claims so that each Investor's share can be calculated, (b) resolve the administrative, priority, and secured claims that must be paid ahead of Investors, including the priority claims asserted by taxing authorities described in Section III, (c) set appropriate reserves, and (d) obtain any required Court approvals. The Trustee does not expect to initiate distributions to Investors in 2026 unless it is able to consensually resolve the priority tax claims discussed above.

32. The projected recovery to Investors has not changed from the range disclosed with the Plan: the Trustee continues to expect total distributions on account of Class A and Class B Plan Recovery Trust Units to fall between 19.7% and 35.9% of an Investor's Tranche 1 Claim. However, the Trustee expects the initial distribution to be less than 10% of an Investor's Tranche 1 Claim,

with further distributions to follow as the remaining properties are sold and as litigation recoveries are realized. Actual recoveries will depend on property sale prices, the outcome of the litigation described in Section VI, the resolution of disputed claims, and the costs of administration, and could fall outside the projected range.

33. Distributions will be made by check mailed to the address on file with Verita. Checks to Investors who invested through an IRA or Roth IRA will be clearly labeled as retirement funds; checks for other investments will be labeled as non-IRA funds. The Trust will not make distributions by wire or to any account designated by email or telephone. Advance notice of the initial distribution will be provided in a status report filed with the Court and posted on the Committee Communications page.

**CONCLUSION**

34. This Report is intended to provide Investors with a high-level update on the administration of the Trust during the Reporting Period. The Trustee will file additional reports as material developments occur and, in any event, on a quarterly basis. The Trustee and his professionals are aware that this process has been long and frustrating for Investors, and they are focused on completing the claims process, selling the remaining properties, and pursuing the litigation that offers the greatest potential recovery, so that distributions can begin as soon as the Plan and the Trust Agreement permit.

**INVESTORS SHOULD BE ALERT TO FRAUDULENT COMMUNICATIONS. THE TRUST WILL NEVER ASK AN INVESTOR TO PROVIDE BANK ACCOUNT OR WIRE INFORMATION, TO PAY A FEE TO RECEIVE A DISTRIBUTION, OR TO CLICK A LINK TO "CLAIM" FUNDS. ALL DISTRIBUTIONS WILL BE MADE BY CHECK AND ADVANCE NOTICE WILL BE POSTED AT HTTPS://VERITAGLOBAL.NET/LM. INVESTORS WHO RECEIVE A SUSPICIOUS COMMUNICATION SHOULD NOT RESPOND TO IT AND SHOULD FORWARD IT TO LMCOMMITTEE@PSZJLAW.COM.**

Dated: November 2, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

By: *<u>/s/ Brooke E. Wilson</u>*
Debra I. Grassgreen
John D. Fiero
Jason H. Rosell
Brooke E. Wilson

*Counsel to the LFM Plan Recovery Trust*

Case: 24-10545 Doc# 4607 Filed: 11/02/26 Entered: 11/02/26 19:00:23 Page 13 of 14

# Appendix 1

## Property Sale Report

| Address | City | Status | Sale Date | Sale Price | Net Sale Proceeds |
|---|---|---|---|---|---|
| 20564 Broadway | Sonoma | Sold | 05/20/26 | 1,250,000 | 273,534 |
| 7319/7321 Berna Way | Sacramento | Sold | 05/22/26 | 390,000 | - |
| 443 Casabonne Lane | Sonoma | Sold | 06/08/26 | 350,000 | 310,455 |
| 280, 310/312, 350 Butcher Road | Vacaville | Sold | 06/10/26 | 550,000 | 387,888 |
| 415 Pacific Ave. | Piedmont | Sold | 06/10/26 | 5,000,000 | 868,090 |
| 635 Broadway | Sonoma | Sold | 06/12/26 | 1,375,000 | 302,932 |
| 1151 Broadway | Sonoma | Sold | 06/12/26 | 1,350,000 | 282,034 |
| 645-651 Broadway / 10 Maple Street | Sonoma | Sold | 06/12/26 | 3,525,000 | 781,844 |
| 20490 Broadway | Sonoma | Sold | 06/17/26 | 2,200,000 | 384,066 |
| 1014 1st St W | Sonoma | Sold | 06/26/26 | 1,155,000 | 254,234 |
| 302 304 310 1st Street East | Sonoma | Sold | 07/10/26 | 3,700,000 | 1,227,295 |
| 520/530/532 Studley Street | Sonoma | Sold | 07/15/26 | 1,420,000 | 186,851 |
| 333, 371, 411 Wilkerson Avenue | Perris | Sold | 07/16/26 | 6,700,000 | 1,370,600 |
| 405 London Way | Agua Caliente | Sold | 07/30/26 | 3,367,350 | 548,337 |
| 18590 Hwy 12 | Boyes Hot Springs | Sold | 08/14/26 | 1,350,000 | 115,990 |
| 236 King Ave #C | Piedmont | Sold | 08/14/26 | 2,792,000 | 562,874 |
| 241 1st Street West | Sonoma | Sold | 08/24/26 | 2,082,691 | 666,873 |
| 18275 Hwy 12, 18285 Sonoma Highway, 320 Arroyo Road | Boyes Hot Springs | Sold | 09/01/26 | 2,500,000 | 542,190 |
| 171 West Spain Street | Sonoma | Sold | 09/09/26 | 2,060,000 | 487,383 |
| 969 Rachael Rd | Sonoma | Sold | 10/13/26 | 4,995,000 | 32,536 |
| 2151 Salvio Street | Concord | Sold | 10/30/26 | 15,000,000 | 1,562,936 |
| **TOTAL:** | | | | **63,112,041** | **11,148,943** |
| 18580 Sonoma Highway | Sonoma | Sale Pending | | | |
| 151-155 East Napa Street | Sonoma | Sale Pending | | | |
| 967 Broadway | Sonoma | Sale Pending | | | |
| 525 West Napa Street | Sonoma | Sale Pending | | | |
| 19357 Hwy 12 | Sonoma | Sale Pending | | | |
| 4920 Samo Lane | Fairfield | Listed | | | |
| 222-226 West Spain Street | Sonoma | Listed | | | |
| 5701/5703 Orange Avenue | Sacramento | Listed | | | |
| 6359 Auburn Boulevard | Citrus Heights | Listed | | | |
| 2500 Castle Rd | Sonoma | Listed | | | |
| 3003 Castle Rd | Sonoma | Listed | | | |
| 3200 Castle Rd | Sonoma | Listed | | | |
| 4334 Clayton Rd | Ashland | Listed | | | |
| 18010 Hwy 12 | Boyes Hot Springs | Listed | | | |
| 454 15th Street | Del Mar | Listed | | | |
| 5202 Gateway Plaza Dr | Benicia | Listed | | | |
| 5234 Gateway Plaza Dr | Benicia | Listed | | | |
| 1050 Elm Street | Napa | Returned to Lender | | | |
| 830 Illinois Street #1-4 | Fairfield | Returned to Lender | | | |
| 7316/7318 Arleta Court | Sacramento | Returned to Lender | | | |